IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action Nos. 05–cv–01563–EWN–BNB and 05–cv–01903
     (*cases consolidated for all purposes*)

ANDRÉ ANDROPOLIS and MARK BAIRD, on behalf of themselves and all others
similarly situated,

     Plaintiffs,

v.

MICHAEL J. SNYDER,
JAMES P. McCLOSKEY,
RED ROBIN GOURMET BURGERS, INC., a Delaware Corporation,

     Defendants.

_____

Civil Action No. 05–cv–1707–EWN–BNB
     (*case consolidated for pre-trial proceedings*)

ELLIOT WILSTER, derivatively on behalf of Red Robin Gourmet Burgers, Inc.,

     Plaintiff,

v.

MICHAEL J. SNYDER,
JAMES P. McCLOSKEY,
ROBERT J. MERULLO,
JAMES T. ROTHE,
GARY J. SINGER,
DENNIS B. MULLEN,
BENJAMIN D. GRAEBEL, and
EDWARD T. HARVEY, JR.,

     Defendants,

and

RED ROBIN GOURMET BURGERS, INC., a Delaware Corporation,

     Nominal Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is a shareholder derivative action and securities fraud case. Plaintiff Elliot Wilster,[1] derivatively on behalf of Red Robin Gourmet Burgers, Inc. ("Red Robin"), asserts the following claims: (1) breach of fiduciary duties for usurping corporate opportunities against Defendants Michael J. Snyder and Robert J. Merullo; (2) breach of fiduciary duties for insider selling and misappropriation of information by Defendants Snyder, McCloskey, Merullo, Mullen, and Harvey; (3) breach of fiduciary duties for failing to maintain adequate company-level controls and accounting practices against all Defendants; (4) breach of fiduciary duties for failing to maintain adequate financial controls to ensure the accuracy and reliability of the company's financial statements; (5) gross mismanagement against all Defendants; (6) waste of corporate assets against all Defendants; (7) unjust enrichment against all Defendants; and (8) disgorgement under the Sarbanes-Oxley Act against Defendants Snyder and McCloskey. This matter is before the court on: (1) "Motion of Nominal Defendant Red Robin Gourmet Burgers, Inc. to Dismiss Amended

---

[1]As described in more detail below, Eliot Wilster is not the named Plaintiff in the consolidated action. Despite this, Wilster brought the shareholder derivative suit and for purposes of this Order and Memorandum of Decision, my references to "Plaintiff" refer to Wilster.

Shareholder Derivative Complaint For Failure to Plead Demand Futility," filed January 31, 2006; (2) "Motion of Individual Defendants James T. Rothe, Gary J. Singer, Dennis B. Mullen, Benjamin D. Graebel, Edward T. Harvey, Jr., and Robert J. Merullo to Dismiss Amended Shareholder Derivative Complaint For Failure to State a Claim on Which Relief May Be Granted," filed January 31, 2006; (3) "Defendant James P. McCloskey's Motion to Dismiss Amended Shareholder Derivative Complaint," filed February 15, 2006; (4) "Defendant Michael J. Snyder's Motion to Dismiss and Notice of Joinder in the Remaining Defendants' Motions to Dismiss," filed February 15, 2006; (5) "Plaintiff Elliot Wilster's Motion for Leave to File Surreply to Combined Reply Brief in Support of Motion of Nominal Defendant Red Robin Gourmet Burgers, Inc. to Dismiss for Failure to Plead Demand Futility and Motion of Individual Defendants to Dismiss for Failure to State a Claim on Which Relief May be Granted," filed April 26, 2006; and (6) "Defendant Michael J. Snyder's Motion to Cite Supplemental Authority in Support of His Motion to Dismiss," filed August 2, 2006.  Jurisdiction is based on 28 U.S.C. § 1331 (2006).

**FACTS**

*1.     Factual Background*

The following facts are taken from Plaintiff's complaint and the parties' submissions with respect to the shareholder derivative action.  Plaintiff is, and was at all time relevant hereto, an owner and holder of Defendant Red Robin common stock.  (Verified Am. Shareholder Derivative Compl. and Demand For Jury Trial ¶ 24 [filed Dec. 12, 2005] [hereinafter "Am. Compl."].)  Defendant Red Robin, a Delaware corporation, is headquartered in Greenwood Village,

Colorado.  (*Id.* ¶ 25.)  Defendant Red Robin, together with its subsidiaries, operates a casual

dining restaurant chain that serves gourmet burgers throughout the United States and Canada.

(*Id.* ¶ 6.)  Defendant Snyder was, until August 11, 2005, Chairman, President, Chief Executive

Officer ("CEO"), Chief Operating Officer ("COO"), and a director of Defendant Red Robin.  (*Id.*

¶ 26.)  On August 11, 2005, Defendant Red Robin announced the appointment of Defendant

Mullen, a director since 2002, as Chairman of the Board and CEO.  (*Id.*¶ 29.) Defendant

McCloskey was, until August 11, 2005, Chief Financial Officer ("CFO") of Defendant Red Robin.

(*Id.* ¶ 27.)  Defendant Merullo is, and at all times relevant hereto was, Vice President of

Restaurant Operations for Defendant Red Robin.  (*Id.* ¶ 28.)  Defendants Mullen, Harvey, Rothe,

Singer, and Graebel are, and at all times relevant hereto were, the directors of Defendant Red

Robin's Board of Directors ("the Board").  (*Id.* ¶¶ 29–33.)

     In opening new restaurants, Defendant Red Robin employs a "cluster strategy" whereby

the Company maximizes its potential by developing restaurants in close proximity to already

existing restaurants.  (*Id.* ¶ 8.)  Defendants Snyder and McCloskey would personally visit and

approve all potential sites before Defendant Red Robin developed a particular restaurant.  (*Id.*)

Plaintiff contends that the primary beneficiary of Defendant Red Robin's development plan has

been Mach Robin, L.L.C. ("Mach Robin"), a franchisee in which Defendant Snyder has a thirty

percent ownership interest and Defendant Merullo has a seven percent ownership.  (*Id.* ¶ 9.)

Plaintiff asserts that Defendant Snyder and the Board violated Defendant Red Robin's Code of

Ethics by granting franchise development rights to Mach Robin.  (*Id.* ¶ 13.)  The Code of Ethics

defines the term "corporate opportunity" and states in relevant part:

> A corporate opportunity is an opportunity to engage in some business that is in the Company's line of business or one in which the Company reasonably expects to engage, that is presented to you in your position with the company rather than your individual capacity, and that the Company is financially able to undertake. You may not take advantage of a corporate opportunity yourself or give it to another person or firm. Your duty to the Company is to make sure that the Company knows of the opportunity and has a fair chance to decide whether to pursue that opportunity.

(*Id.* ¶ 10.)  Additionally, Plaintiff asserts that Defendant Snyder, in violation of the Company's Code of Ethics, used Defendant Red Robin's aircraft and other assets for his personal use and the use of Mach Robin's.  (*Id.* ¶ 16.)  On August 11, 2005, Defendant Red Robin announced that the Board had conducted an internal investigation into Defendant Snyder's conduct and determined that some of Defendant Snyder's expenses were inconsistent with Defendant Red Robin's policies.  (*Id.*)  Defendant Red Robin forced Defendant Snyder to acknowledge his wrongdoing and reimburse Defendant Red Robin $1.25 million.  (*Id.*)  Following the internal investigation, Defendant Red Robin and the Board forced Defendants Snyder and McCloskey into retirement and made them resign from their executive positions at Defendant Red Robin.  (*Id.* ¶ 18.) Defendant Red Robin retained Defendant Snyder as a consultant.  (*Id.*)  Plaintiff contends that "[d]espite the reimbursement by [D]efendant Snyder for his various aircraft, travel and entertainment expenses, [Defendant] Red Robin's announcement regarding [D]efendant Snyder's misuse of [Defendant Red Robin's] assets led to a degradation of [Defendant Red Robin's] corporate image and damage to its market capitalization of over $269.5 million."  (*Id.*)

On June 8, 2005, Defendant Red Robin filed a Form 4/A with the United States Securities and Exchange Commission ("SEC").  (*Id.* ¶ 17.)  Plaintiff asserts the Form 4/A indicates that

Defendant Snyder reaped over $14 million in proceeds by pledging 300,000 shares of Defendant Red Robin stock at artificially inflated prices.  (*Id.*)  Similarly, Plaintiff alleges that Defendant McCloskey benefitted from over $1 million in proceeds by selling 31,000 shares of Defendant Red Robin stock at artificially inflated prices.  (*Id.*)

**2.      Procedural History**

On August 15, 2005, Plaintiff Andre Andropolis filed a federal securities class action against Defendants Red Robin, Snyder, and McCloskey, styled *Andre Andropolis v. Red Robin Gourmet Burgers, Inc, Michael J. Snyder, and James P. McCloskey*, No. 05–cv–01563.  (Pl.'s Compl. For Violation of the Federal Securities Laws and Demand For Jury Trial [filed Aug. 15, 2005].)  On August 31, 2005, Plaintiff, derivatively on behalf of Defendant Red Robin, filed a verified shareholder derivative complaint against Defendants Snyder, Merullo, Rothe, Singer, Mullen, Graebel, Harvey, and nominal Defendant Red Robin for violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment.  (Verified Shareholder Derivative Compl. And Demand For Jury Trial [filed Aug. 31, 2005].)  On October 17, 2005, Defendant Red Robin sought to consolidate the putative securities class action with the subsequently filed shareholder derivative action, *Wilster v. Red Robin Gourmet Burgers, Inc., et al.*, No. 05–cv–01707.  (Def. Red Robin Gourmet Burgers, Inc.'s Mot. to Consolidate Case With Parallel Shareholder Derivative Action [filed Oct. 17, 2005].)  On October 21, 2005, Defendants Merullo, Rothe, Singer, Mullen, Graebel, and Harvey filed a motion to join in Defendant Red Robin's motion to consolidate the actions.  (Joinder in Def. Red Robin Gourmet Burgers, Inc.'s Mot. to Consolidate Case With Parallel Shareholder

Derivative Action [filed Oct. 21, 2005].)  On October 24, 2005, Defendant Snyder joined in

Defendant Red Robin's motion to consolidate.  (Def. Michael J. Snyder's Notice of Joinder in

Red Robin Gourmet Burgers, Inc.'s, Mot. to Consolidate [filed Oct. 24, 2005].)

On December 19, 2005, United States Magistrate Judge Boland issued an order

consolidating the two aforementioned cases with *Baird v. Red Robin Gourmet Burgers, Inc.*,

05–cv–01903, another securities fraud class action based on the same allegations.  (Order [Dec.

19, 2005] [hereinafter "Magistrate Order"].)  Both *Andropolis* and *Baird* asserted violations of

the federal securities laws and are purported class actions.  (*Id.* at 2.)  *Wilster* is a shareholder

derivative suit.  The magistrate noted that:

> [e]ach of the three cases is based on allegations: (1) concerning
> events occurring during the period of time between November 8,
> 2004 and August 11, 2005; (2) that [Defendant] Snyder, the former
> chairman, president, and CEO of Red Robin, abused his position by
> violating the company's Code of Ethics during that period; (3) that
> the company lacked adequate internal controls to prevent such
> abuses; (4) that company insiders knew about [Defendant] Snyder's
> alleged abuses and profited from that knowledge; (5) that the
> company issued false projections regarding its expected revenues
> and earnings per share in 2005; and (6) that the faulty projections
> were the result of insufficient internal controls by the company.

(*Id.* at 2.)

On December 15, 2005, Plaintiff filed an amended shareholder derivative complaint.  (Am.

Compl.)  Plaintiff asserted the following claims: (1) breach of fiduciary duties for usurping

corporate opportunities against Defendants Snyder and Merullo; (2) breach of fiduciary duties for

insider selling and misappropriation of information by Defendants Snyder, McCloskey, Merullo,

Mullen, and Harvey; (3) breach of fiduciary duties for failing to maintain adequate company-level

controls and accounting practices against all Defendants; (4) breach of fiduciary duties for failing to maintain adequate financial controls to ensure the accuracy and reliability of the company's financial statements; (5) gross mismanagement against all Defendants; (6) waste of corporate assets against all Defendants; (7) unjust enrichment against all Defendants; and (8) disgorgement under the Sarbanes-Oxley Act against Defendants Snyder and McCloskey.  (*Id.* ¶¶ 101–45.)

On January 31, 2006, Nominal Defendant Red Robin filed a motion to dismiss Plaintiff's amended shareholder derivative complaint.  (Mot. of Nominal Def. Red Robin Gourmet Burgers, Inc. to Dismiss Am. Shareholder Derivative Compl. For Failure to Plead Demand Futility [filed Jan. 31, 2006] [hereinafter "Nom. Def.'s Br."].)  Defendant Red Robin argues that Plaintiff has not pled particularized facts sufficient to demonstrate that a pre-litigation demand on the Board was futile and all claims in the amended shareholder derivative complaint must be dismissed against all Defendants.  (*Id.*, *passim*.)  On March 17, 2006, Plaintiff filed a response to Defendant Red Robin's motion to dismiss.  (Pl.'s Combined Opp'n to Nominal Def. Red Robin Gourmet Burgers, Inc., Michael J. Snyder, James P. McCloskey and the Individual Defs.' Mots. to Dismiss Am. Shareholder Derivative Compl. [filed Mar. 17, 2006] [hereinafter "Pl.'s Resp."].)  On April 7, 2006, Defendant Red Robin filed a reply in support of its motion to dismiss.  (Combined Reply Br. in Supp. of: (1) Mot. of Nominal Def. Red Robin Gourmet Burgers, Inc. to Dismiss For Failure to Plead Demand Futility, and (2) Mot. of Individual Defs. James T. Rothe, Gary J. Singer, Dennis B. Mullen, Benjamin D. Graebel, Edward T. Harvey, Jr., and Robert Merullo to Dismiss For Failure to State a Claim on Which Relief May be Granted [filed Apr. 7, 2006] [hereinafter "Defs.' Reply"].)  This matter is fully briefed.

On January 31, 2006, Defendants Rothe, Singer, Mullen, Graebel, Harvey, and Merullo filed a motion to dismiss the shareholder derivative complaint for failure to state a claim upon which relief can be granted and joinder in Defendant Red Robin's motion to dismiss for demand futility.  (Mot. of Individual Defs. James T. Rothe, Gary J. Singer, Dennis B. Mullen, Benjamin D. Graebel, Edward T. Harvey, Jr., and Robert Merullo to Dismiss For Failure to State a Claim on Which Relief May be Granted [filed Jan. 31, 2006].)  Defendants Rothe, Singer, Mullen, Graebel, Harvey, and Merullo ("Director Defendants") argue that the court should dismiss this action based on Plaintiff's failure to plead demand futility alone.  (*Id.* at 1.)  Additionally, these Defendants allege that Plaintiff has not stated a claim against the Director Defendants or Merullo.  (*Id.*)  On March 17, 2006, Plaintiff filed a response to the Director Defendants' motion to dismiss.  (Pl.'s Resp.)  On April 7, 2006, the Director Defendants filed a reply in support of their motion to dismiss.  (Defs.' Reply.)  This matter is fully briefed.

On February 15, 2006, Defendant McCloskey filed a motion to dismiss Plaintiff's derivative complaint.  (Def. James P. McCloskey's Mot. to Dismiss Am. Shareholder Derivative Compl. [filed Feb. 15, 2006].)  Defendant McCloskey asserts three arguments in support of dismissal: (1) Plaintiff has failed to adequately plead demand futility; (2) the complaint fails to state a claim under Delaware law for breach of fiduciary duty, gross mismanagement, corporate waste, or unjust enrichment; and (3) Plaintiff's disgorgement claim under the Sarbanes-Oxley Act fails as a matter of law because Congress did not create a private right of action.  (*Id.* at 2–3.)  On March 17, 2006, Plaintiff filed a response to Defendant McCloskey's motion to dismiss.  (Pl.'s Resp.)  On April 7, 2006, Defendant McCloskey filed a reply in support of his motion to dismiss.

(Reply in Supp. of Def. James McCloskey's Mot. to Dismiss [filed Apr. 7, 2006].)  This matter is fully briefed.

On February 15, 2006, Defendant Snyder filed a motion to dismiss Plaintiff's shareholder derivative complaint and joinder in the remaining Defendants' motions.  (Def. Michael J. Snyder's Mot. to Dismiss and Notice of Joinder in the Remaining Defs.' Mots. to Dismiss [filed Feb. 15, 2006].)  In addition to joining in Defendant Red Robin's motion, Defendant Snyder argues that: (1) Plaintiff's complaint fails to rebut the presumption under Delaware law that directors are presumed to have fulfilled their fiduciary duties; (2) the complaint does not satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b); (3) Defendant Snyder is exculpated from liability for all acts of negligence, gross negligence, or breaches of the duty of care; (4) Plaintiff's complaint is "devoid" of any allegations demonstrating that Defendant Snyder harmed Defendant Red Robin or its shareholders; (5) Defendant Snyder and the Board fully complied with Delaware law when it entered into a franchise agreement in which Defendant Snyder had interest; and (6) the amended complaint fails to state a claim under Section 304 of the Sarbanes-Oxley Act. (*Id.* at 2–3.)  On March 17, 2006, Plaintiff filed his response to Defendant Snyder's motion to dismiss.  (Pl.'s Resp.)  On April 7, 2006, Defendant Snyder filed a reply in support of his motion to dismiss.  (Reply in Supp. of Def. Michael J. Snyder's Mot. to Dismiss [filed Apr. 7, 2006].) This matter is fully briefed.

## ANALYSIS

### 1.      *Standard of Review*

I evaluate Defendants' various motions to dismiss Plaintiff's verified shareholder

derivative complaint based on the demand futility requirement, under Federal Rule of Civil

Procedure 23.1 and Delaware Chancery Court Rule 23.1.  In considering a motion to dismiss

under Rule 23.1, the court must accept all the well-pled allegations in the complaint as true.

*Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 886 (Del. Ch. 1999).  Conclusory allegations

will not be accepted as true.  *Id.*

"The derivative form of action permits an individual shareholder to bring 'suit to enforce a

corporate cause of action against officers, directors, and third parties.'"  *Kamen v. Kemper Fin.*

*Serv., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 [1970]).  The

purpose of the derivative action is to give the individual shareholder a means to protect the

interests of the corporation from "the misfeasance and malfeasance of 'faithless directors and

managers.'"  *Id.* (quoting *Choden v. Beneficial Loan Corp.*, 337 U.S. 541, 548 [1949]).  As a

precondition to bringing a derivative action, the shareholder must demonstrate that "the

corporation itself had refused to proceed after suitable demand, unless excused by extraordinary

conditions."  *Ross*, 396 U.S. at 534.  Federal Rule of Civil Procedure 23.1 reiterates the

requirement that a shareholder derivative complaint must "allege with particularity the efforts, if

any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and, if

necessary from the shareholders or members, and the reasons for the plaintiff's failure to obtain

the action or for not making the efforts."  Fed. R. Civ. P. 23.1 (2006).

To determine the substantive law applicable to a failure to make a demand on directors in a derivative action context, federal courts must "apply the demand futility exception as it is defined by the law of the State of incorporation." *Kamen*, 500 U.S. at 108–09. Here, the parties agree that Delaware law controls the futility determination. (Nominal Def.'s Br. at 8–9; Pl.'s Resp. at 15.)

Under Delaware law, the demand requirement is a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise. *Aronson v. Lewis*, 473 A.2d 805, 809 (Del. 1984), *overruled on other grounds*, *Brehm v. Wisner*, 746 A.2d 244, 255 (Del. 2000). The demand requirement "gives the directors — even interested, non-independent directors — an opportunity to consider, or reconsider, the issue in dispute." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001) (applying the Delaware test). Rule 23.1 requires the complaint to allege with particularity that a majority of the Board is "incapable of exercising its power and authority to pursue the derivative claims directly." *White v. Panic*, 783 A.2d 543, 551 (Del. 2001). In *Aronson*, the Delaware Supreme Court held: "a demand on the board is excused only if the complaint contains particularized factual allegations raising a reasonable doubt that either: (1) 'the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* (quoting *Aronson*, 473 A.2d at 814).

This test is not appropriate where the challenged conduct is board inaction, as here. *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993). Under *Rales*, where a plaintiff has not made a demand on a board of directors and the subject of the derivative action is not a business decision

of the board, the court must determine "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, *as of the time the complaint is filed*, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 934 (emphasis added).

**2.      *Demand Futility***

Defendants allege that Plaintiff has not pled particularized facts sufficient to demonstrate that he was justified in failing to make a demand on the Board prior to filing this derivative lawsuit and all claims in the amended shareholder derivative complaint must be dismissed as to all Defendants.  (Nominal Def.'s Br. at 1–2.)  Plaintiff concedes that he did not make a demand on the Board, (Am. Compl. ¶¶ 95–100), but contends that such a demand would have been "futile" because the Board was incapable of being impartial.  (Pl.'s Resp. at 17.)  Plaintiff contends that he has alleged sufficient facts creating a reasonable doubt that a majority of the Board lacks independence or is interested.  Plaintiff concedes that the test articulated in *Rales* controls the analysis of his claims.  (*Id.* at 15–17.)  I address Plaintiff's arguments below.

**a.      *Independence***

Plaintiff alleges that a majority of the Board is not independent, thereby excusing a demand, because: (1)  "Defendant Snyder's total domination and control over the [B]oard raises a reasonable doubt as to the independence of the Board, (Pl.'s Resp. at 17); (2) Defendants Graebel and Singer lack independence because they have a material financial interest in maintaining a business relationship between Defendant Red Robin and their own private business; and (3) Defendant Mullen lacks independence from Defendants Harvey, Singer, and Rothe by virtue of

-13-

their membership on the compensation committee.  (*Id.* at 30–34.)  I address Plaintiff's arguments

regarding independence below.

### (1)      Defendant Snyder's Alleged Domination and Control

Plaintiff asserts that he was justified in not making a demand on the Board prior to

initiating this lawsuit because "[u]nder the weight of [Defendant Snyder's] domination and

control, the Board participated in [D]efendant Snyder[] improper self-dealing . . . and caused

[Defendant Red Robin] to conceal [Defendant] Snyder's abuse of his corporate position."  (Am.

Compl. ¶ 98[a].)  "'Independence means that a director's decision is based on the corporate

merits of the subject before the board rather than extraneous considerations or influences.'"

*Brehm v. Eisner*, 746 A.2d 244, 256 n.31 (Del. 2000) (quoting *Aronson*, 473 A.2d at 814).

Plaintiff can establish lack of independence by showing that the Director Defendants are

"beholden" to Snyder or "so under his influence that their discretion would be sterilized."  *Rales*,

634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 815).  Put another way, a director may be

controlled by another person if that person has:

> the direct or indirect unilateral power to decide whether the director continues to
> receive a benefit upon which the director is so dependent or is of such subjective
> material importance that its threatened loss might create a reason to question
> whether the director is able to consider the merits of the demand objectively.

*Telxon Corp. v. Meyerson*, 802 A.2d 257, 265 (Del. 2002).  Indeed, "[a] party alleging

domination and control of a company's board of directors bears the burden of proving such

control by showing a lack of independence on a part of a majority of the directors."  *Id.* at 265.

-14-

Plaintiff provides the court with four examples of Defendant Snyder's alleged domination and control over a majority of the Board.  I evaluate each example in turn.

### (A)   *Mach Robin Transactions*

Plaintiff alleges that Defendant's domination and control is evidenced, in part, by the Mach Robin transactions.  (Pl.'s Resp. at 18.)  Specifically, Plaintiff asserts that:

> Defendants Snyder and McCloskey . . . approve[d] all new sites before a final decision was made by the Board to put a restaurant in a given location.  Further, Defendant Snyder cherry-picked the most lucrative corporate opportunities and, by exercising his [] control, ensured that the Board granted these opportunities to Mach Robin and waived the relevant provisions of the Company's Code of Ethics.

(*Id.*)  Plaintiff's allegations regarding the Mach Robin transactions do not demonstrate that Defendant Snyder controlled a majority of the Board such that any of the directors would not continue receiving a "benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the merits of the demand objectively."  *Telxon*, 802 A.2d at 265.  In fact, Plaintiff does not allege that a majority of the Board has an interest in the Mach Robin transactions.  Plaintiff's "shorthand shibboleth of 'dominated and controlled directors is insufficient.'"  *Aronson*, 473 A.2d at 816 (quoting *Kaplan v. Centex Corp.*, 284 A.2d 119, 123 [Del. Ch. 1971]).  Moreover, "'[t]he fact that a Corporation's directors have previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligation to the corporation, will refuse to take up

the suit.'" *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 271 (S.D.N.Y. 1986)

(construing Delaware law) (quoting *Lewis v. Graves*, 701 F.2d 245, 248 [2d Cir. 1983]).

Indeed, Plaintiff's allegations regarding the Board's approval of the Mach Robins

transactions shows nothing more than the fact that Mach Robins is a successful franchise.  (*See*

Pl.'s Resp. at 18.)  Further, Plaintiff does not demonstrate how Defendant Snyder's "cherry-

pick[ing]" of the "most lucrative corporate opportunities" somehow demonstrates his control

over a majority of directors.  (*Id.*)  The Mach Robins transactions do not demonstrate that a

majority of the Board was "beholden" to Defendant Snyder.  *See Rales*, 634 A.2d at 936 (quoting

*Aronson*, 473 A.2d at 815).  Delaware courts are clear that "in the demand-futile context a

plaintiff charging domination and control of one or more directors must allege particularized facts

manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or

interests of the . . . persons doing the controlling.'"  *Aronson*, 473 A.2d at 816 (quoting *Kaplan*,

284 A.2d at 123).  Thus, Plaintiff's allegations as to this point are unavailing.

### *(B)*      *Defendant Snyder's Consulting Position*

Next, Plaintiff alleges that one of the most significant indicators of Defendant Snyder's

domination and control of the Board is the Board's decision to allow Defendant Snyder to remain

as a consultant to Defendant Red Robin upon retirement.  (Pl.'s Resp. at 20.)  On August 11,

2005, prior to filing of the initial complaint in this matter, Defendant Red Robin announced that

Defendants Snyder and McCloskey were retiring and resigning from their positions at Defendant

Red Robin.  (Am. Compl. ¶ 18.)  The announcement stated that:

> [t]hese management and governance changes follow an internal investigation
> conducted by a special committee of [] [Defendant Red Robin's] [B]oard of
> [D]irectors relating to use of chartered aircraft and travel and entertainment
> expenses.  The special committee, which retained independent counsel to conduct
> the investigation, identified various expenses by [Defendant] Snyder that were
> inconsistent with [Defendant Red Robin's] policies or that lacked sufficient
> documentation. [Defendant] Snyder has agreed to reimburse [Defendant Red
> Robin] for such expenses following completion of the special committee's review.
> [Defendant Red Robin] has notified the [SEC] of the internal investigation.

(Am. Compl. ¶ 72.)  The Board allowed Defendant Snyder to remain a consultant with Defendant

Red Robin following his retirement.  (*Id.*)  Plaintiff asserts that the Board's decision to allow

Defendant Snyder to remain as a consultant "reeks of a public relations move" because Defendant

Snyder "retained control over the direction of [Defendant Red Robin] and the Board, as always,

acquiesced to his demands."  (Pl.'s Resp. at 20.)  Plaintiff's argument is unavailing.

Plaintiff must assert particularized, non-conclusory facts showing domination or control.

*Aronson*, 473 A.2d at 816.  Plaintiff does not provide any citation to the amended complaint,

(Pl.'s Resp. at 20), nor does Plaintiff explain demonstrate facts to support his assertion that

Defendant Snyder maintained control over the Board in his consultant position.  Plaintiff

essentially invites  this court to presume facts, not pled in the complaint, which suggest a

consultation agreement necessarily creates a reasonable doubt that Defendant Snyder exercised

dominion or control over a majority of the Board.  I decline Plaintiff's invitation.  Delaware law

does not allow the court to excuse demand by innuendos raised in Plaintiff's complaint.  *In re*

*Friedman's, Inc. Derivative Litigation*, 386 F. Supp. 2d 1355, 1362 (N.D. Ga. 2005) (applying

Delaware law and concluding that "[t]he innuendo embedded in the allegations" and the complaint

was not sufficient to satisfy the plaintiff's pleading obligations, particularly the demand

requirement).  Moreover, the facts, as pled by Plaintiff, demonstrate that prior to the initiation of

the law suit, Defendant Red Robin voluntarily conducted an internal investigation, took corrective

action, and self-reported a matter to the SEC.  (Am. Compl. ¶ 72.)  It is difficult to conceive that

a majority of the Board was so "beholden" to Defendant Snyder, yet they were able to initiate an

internal investigation and force Defendant Snyder's retirement.  Accordingly, Plaintiff's argument

as to this point is unavailing.

### *(C)*     *Defendant Snyder's Stock Ownership*

Third, Plaintiff contends that the Board was not independent and Defendant Snyder's

domination and control over the Board is evidenced through Defendant Snyder's stock

ownership.  (Pl.'s Resp. at 21.)  "Stock ownership alone, at least when it amounts to less than a

majority, is not sufficient proof of domination or control."  *Kaplan*, 284 A.2d at 122–23; *Jacobs*

*v. Yang*, Del. Ch. 2004 WL 1728521, at *4 (Del. Ch. Aug. 2, 2004) (ownership of approximately

14.7% of Yahoo! Common stock "obviously insufficient to control an election of Yahoo!'s

directors"); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040,

1054 (Del. Super. Ct. 2004) (holding that Stewart's 94% stock ownership was not enough to

create a reasonable doubt of independence).  Plaintiff contends that "while stock ownership alone

may not be sufficient," to create a reasonable doubt regarding domination and control, "there are

circumstances in which a shareholder with less than majority of a company's equity can effectively

control and dominate a board — for example, where there is evidence of the exercise of power by

a dominant chief executive."  (Pl.'s Resp. at 21.)  As noted above, Plaintiff has not pled

particularized facts to create a reasonable doubt regarding the Board's independence from

Defendant Snyder.  Thus, viewed alone, stock ownership is not enough.  Accordingly, Plaintiff's

argument as to this point is unavailing.

### (D)      Transactions Beneficial to Defendant Snyder's Family

Finally, Plaintiff contends Defendant Red Robin's business transactions with two entities

in which members of Defendant Snyder's family had an interest demonstrates Defendant Snyder's

domination or control over the Board.  (*Id.*)  Specifically, Plaintiff asserts that Defendant Snyder

successfully dominated and controlled the Board through his "successful efforts to ensure that

[Defendant] Red Robin enter into transactions that primarily benefitted members of his family."

(*Id.*)  Plaintiff does not explain or identify how Defendant Red Robin's  connection with these two

business entities demonstrates Defendant Snyder's domination or control over a majority of the

Board.  Again, Plaintiff asks the court to draw a nexus between past Board activity and the

Board's independence to respond to a pre-litigation demand by Plaintiff.  As stated above,

Delaware law forbids this.  *See In re Friedman's*, 386 F. Supp. 2d at 1362 (applying Delaware

law and concluding that "[t]he innuendo embedded in the allegations" and the complaint was not

sufficient to satisfy the plaintiff's pleading obligations, particularly the demand requirement).

Accordingly, Plaintiff's argument as to this point is unavailing.

Accepting all the well-pled non-conclusory allegations in the complaint as true, and

drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not adequately raised a

reasonable doubt that a majority of the Board was beholden to Defendant Snyder and could not

independently consider Plaintiff's demand.  Accordingly, Plaintiff has not adequately plead

demand futility as to this issue.

### *(2)      Defendants Graebel's and Singer's Independence*

Plaintiff alleges that there is a reasonable doubt regarding Defendants Graebel's and Singer's independence from the Board because they have a material financial interest in maintaining a business relationship between Defendant Red Robin and their own private businesses.  (Pl.'s Resp. at 30–32.)  Plaintiff argues that Defendant Graebel — whose company has provided moving services to Defendant Red Robin, and Defendant Singer — whose law firm has provided legal services to Defendant Red Robin, should be presumed to lack independence because of those business relationships.  (*Id.* at 31.)  I note at the outset that neither of these entities or the related transactions are the subject of either the shareholder derivative suit or the federal securities fraud litigation.  Plaintiff simply alleges that Defendants Graebel's and Singer's interest in "maintaining the business they drive from [Defendant] Red Robin" raises a reasonable doubt as to their independence and ability to consider a demand on the Board.  (*Id.* at 31–32.)  In support, Plaintiff cites *Harbor Fin.*, 751 A.2d at 889 and *In re New Valley Corp.*, No. 17649, Del Ch. 2001 WL 50212, at *7 (Del. Ch. Jan. 11, 2001).  I evaluate each case below.

In *Harbor Fin.*, the plaintiff alleged that a majority of the Board members were not independent because they had an interest in the merger that was the subject of the shareholder derivative suit.  *Harbor Fin.*, 751 A.2d at 886.  Specifically, the *Harbor Fin.* court considered the independence and objectivity of one director because "of his familial and business relationships."  *Harbor Fin.*, 751 A.2d at 886.  The director at issue in *Harbor Fin.* had a financial interest in the precise entity involved in the transaction that was the subject of the litigation.  *Id.* at 887.  Thus, the court was "hesitant to conclude that a director whose interest in a transaction [that] clearly

implicates the literal terms of 8 De. C. § 144[2] can disinterestedly evaluate whether the

corporation should sue to rescind that transactions." *Id.*

Here, Plaintiff does not allege that Defendants Graebel and Harvey have an interest in

Mach Robin or any other transactions that forms the basis of the instant shareholder derivative

suit.  Moreover, Plaintiff has not alleged particularized facts to suggest that Defendants Graebel

and Singer are "beholden" to Defendants Snyder or Merullo.  Thus, *Harbor Fin.* is inapposite.

Next, Plaintiff cites *New Valley*, 2001 WL 50212, at *7.  In *New Valley*, the court

evaluated the independence of certain directors based on allegations in the complaint that "all the

members of the current Board have current or past business, personal, and employment

---

[2]This section is entitled "Interested directors; quorum."  Specifically, this section states:
(a) No contract or transaction between a corporation and [one] or more of its
directors or officers . . shall be void or voidable solely for this reason, or solely
because the director or officer is present at or participates in the meeting of the
board or committee which authorizes the contract or transaction, or solely because
any such director's or officer's votes are counted for such purpose, if:

    (1)    The material facts as to the director's [] relationship or interest and
           as to the contract or transaction are disclosed or are known to the
           board of directors or the committee, and the board or committee in
           good faith authorizes the contract or transaction by the affirmative
           votes of a majority of the disinterested directors, even though the
           disinterested directors be less than a quorum; or
    (2)    The material facts as to the director's [] relationship or interest and
           as to the contract or transaction are disclosed or are known to the
           shareholders entitled to vote thereon, and the contract or
           transaction is specifically approved in good faith by vote of the
           shareholders; or
    (3)    The contract or transaction is fair as to the corporation as of the
           time it is authorized, approved or ratified, by the board of directors,
           a committee or the shareholders.

8 Del. C. § 144 (2006).

relationships with each other and the entities involved." *Id.* In the instant case there are no such allegations. In fact, Plaintiff's complaint alleges that "Defendant Graebel has a substantial interest in maintaining the business his moving company derives from [Defendant] Red Robin, which is a material amount of income to his company and, therefore to [Defendant] Graebel himself." (Am. Compl. ¶ 98[e].) Plaintiff's complaint does not assert that Defendant Graebel's interest in the transportation company is at issue in this litigation. Similarly, Plaintiff has not alleged particular facts indicating that: (1) the monies allegedly paid to Defendant Singer, or his firm, were so material as to taint his judgment as a director; or (2) Defendant Red Robin's decision to retain Defendant Singer's law firm is the subject of the instant shareholder derivative action. Thus, *New Valley* is inapposite. Accordingly, Plaintiff has not created a reasonable doubt that Defendants Graebel and Harvey are interested and would not be able to consider a demand.

> **(3)   *Defendant Mullen Lacks Independence From Defendants Harvey, Singer, and Rothe By Virtue of Their Membership on the Compensation Committee***

Plaintiff alleges that at the time he commenced this action, "Defendant Mullen was [Defendant] Red Robin's Chairman and CEO. . . . [and] [i]n his capacity as CEO, [Defendant] Mullen received and continues to receive salary and other compensation." (Pl.'s Resp. at 33.) Plaintiff contends that Defendant Mullen lacks independence from Defendants Harvey, Singer, and Rothe because they control his compensation by virtue of their membership on the compensation committee. (*Id.*) At the time Plaintiff filed this shareholder derivative action, Defendant Red Robin's Board consisted of Defendants Mullen, Graebel, Rothe, Harvey, and Singer. I will assume, without deciding, for purposes of this Order and Memorandum of

Decision, that Defendant Mullen lacks independence from Defendants Harvey, Singer, and Rothe. Despite the benefit of this presumption, Plaintiff still cannot demonstrate that the remaining members of the Board — Defendants Graebel, Rothe, Harvey, and Singer — lack independence to consider a demand by Plaintiff. These remaining Defendants form a majority. Thus, Plaintiff cannot demonstrate demand futility based on Defendant Mullen's alleged dependence on Defendants Harvey, Singer, and Rothe. Accordingly, a majority of the Board is, and was at the time Plaintiff filed this action, independent to consider a pre-litigation demand by Plaintiff.

> **b.     Interest**

Plaintiff contends that there is a reasonable doubt that all of the Director Defendants are interested such that demand would have been futile. (Pl.'s Resp. at 22–35.) "A director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). A mere threat of personal liability in the derivative action does not render a director interested. *Id.* Only a "substantial likelihood" of personal liability prevents a director from impartially considering a demand. *Id.* (citing *Aronson*, 473 A.2d at 815). Indeed, even if a director has no personal interest in a decision, "his discretion must also be free from the influence of other interested persons." *Id.* (citing *Rales*, 634 A.2d at 936).

Plaintiff alleges that the Director Defendants[3] are "interested" in the following ways: (1) they participated in Defendant Snyder's wrongdoing and there is a reasonable doubt that they face

---

[3]For the sake of clarity, I once again note that the Director Defendants consist of Defendants Rothe, Singer, Mullen, Graebel, and Harvey.

a sufficiently substantial likelihood of liability; and (2) "Defendants Mullen and Harvey are interested due to their illegal insider selling."  (Am. Compl. at 22–34.)  I address Plaintiff's arguments regarding interest below.

### (1)   *Director Defendants' Interest For Participation in Defendant Snyder's Alleged Wrongdoing*

Plaintiff alleges that "the Board's failure to respond to numerous and obvious *red flags* created an environment wherein Defendant Snyder was able to charge more than [one] million [dollars] in various personal aircraft, travel and entertainment expenses to [Defendant] Red Robin."  (Pl.'s Resp. at 23–24 [emphasis added].)  These alleged "red flags" consist of the following: (1) encouraging a culture that discouraged employees from challenging malfeasance by their supervisors; (2) awarding certain officers, other than Defendant Snyder, unlimited expenses upon one-time approval from the Board; and (3) overlooking the Audit Committee's failure to properly monitor Defendant Snyder's compliance with the Code of Ethics.  (*Id.* at 24.)  Plaintiff appears to insinuate that based on the Board's alleged failure to respond to these "red flags" the Director Defendants face a substantial likelihood of liability for breaching their fiduciary duties.  I address Plaintiff's alleged "red flags" below.

First, Plaintiff alleges that the culture at Defendant Red Robin precluded employees from challenging malfeasance by their superiors and whistle blowers were reported to their supervisors in violation of Company policy.  (Pl.'s Resp. at 24; Am. Compl. ¶ 66.)  Plaintiff does not allege particularized facts that the outside Director Defendants had knowledge of this activity.  Importantly, Plaintiff does not assert the Director Defendants' liability based on "ignorance of

liability creating activities." (*Id.* at 23 n.26.)  Plaintiff is charged with the responsibility of alleging particularized facts that the Director Defendants *knew* of the alleged culture.  (*Id.*)  Indeed, Plaintiff admits this burden.  (*Id.*)

Here, Plaintiff does not assert particularized facts to suggest that: (1) the Director Defendants knew of the alleged "culture;" and (2) this "culture" allowed Defendant Snyder to charge more than one million dollars in personal expenses to Defendant Red Robin.  "Claimed red flags 'are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer.'"  *Rattner v. Bidzos*, No. 19700, 2003 Del. Ch. WL 22284323, at * 13 (Del. Ch. Sept. 30, 2003) (citing *In re Citigroup Inc. Shareholders Litigation*, No. 19827, 2003 Del. Ch. WL 21384599, at * 2 [Del. Ch. June 5, 2003]).  Thus, Plaintiff's allegation that the Director Defendants' ignored a "red flag" that gave rise to Defendant Snyder's malfeasance and thereby gives rise to a substantial likelihood of liability for breaching their fiduciary duties to Defendant Red Robin is unavailing.

Second, Plaintiff asserts that the outside Director Defendants were aware that "certain officers, including at least Defendants Merullo and McCloskey, were granted unlimited expenses upon one-time approval by the Board."  (*Id.* at 24.)  Again, Plaintiff appears to allege that the Board's failure to respond to this "red flag" gave rise to Defendant Snyder's conduct.  (*Id.* at 23–24.)  Plaintiff does not identify the nexus between the Board approving a one-time unlimited expense for officers *other than Defendant Snyder*, and Defendant Snyder's conduct.  (*Id.*)  Thus, this argument regarding the Board approval of expenses for other officers does not demonstrate

that the outside Director Defendants face a substantial likelihood of liability for Defendant

Snyder's acts.

Finally, Plaintiff alleges that Defendants Harvey, Mullen, and Graebel, as members of the

Audit Committee, face and even greater likelihood of liability because they were responsible for

"monitoring [Defendant Red Robin's] compliance with its Code of Ethics which covers the

conduct and ethical behavior of [Defendant] Red Robin's officers and employees." (Pl.'s Resp. at

26; Am. Compl. ¶¶ 76, 86, 98.)  From the outset, I note that Plaintiff has not identified particular

"red flags" or specific conduct that the Audit Committee failed to respond to or rectify.  (Pl.'s

Resp. at 26–27.)  Indeed, Plaintiff simply re-iterates his conclusory allegations regarding the Audit

Committee's and the Director Defendants' "failure to properly monitor Defendant Snyder's

compliance with the Code of Ethics which resulted in a misuse of corporate assets."  (*Id.* at 26.)

As stated above, such conclusory allegations are insufficient to establish that the outside Director

Defendants are "interested" for demand futility purposes.  *Crescent/Mach I Partners, L.P. v.

Turner*, 846 A.2d 963, 981 n.44 (Del. Ch. 2000); *Ash v. McCall*, No. 17132, Del. Ch. 2000 WL

1370341, at * 6 (Del. Ch. Sept. 15, 2000).

Ironically, Plaintiff vociferously argues that the Board "knew of Defendant Snyder's

deliberate non-compliance" and consciously disregarded obvious red flags.  (Pl.'s Resp. at 23

n.26.)  This allegation is directly contrary to Plaintiff's claim that the Board "failed to monitor"

and respond to Defendant Snyder.  (*Id.* at 23–24.)  Failure to monitor and "conscious disregard

for a knowing violation" are different claims.  Regardless, all that Plaintiff's amended complaint

and response demonstrates is that Defendant Red Robin has an audit committee and Defendants

Harvey, Mullen, and Graebel were members of this committee during the alleged impropriety by

Defendant Snyder.  This is not enough to meet Plaintiff's pleading standard and absolve him of

making a demand on the Board.  *See Rattner*, 2003 WL 22284323, at * 13 (holding that simply

because the amended complaint lists a body of rules that may have been violated and the director

defendants membership during that time, that is not sufficient to create a substantial likelihood of

liability).

(2)     <em>Defendants Mullen's and Harvey's Interest Due to Their Alleged Insider Selling</em>

Plaintiff alleges that Defendants Mullen and Harvey received a personal financial benefit

from "a challenged transaction" for which they have a substantial likelihood of liability and

"interestedness is clearly shown when there is a substantial likelihood of liability."  (Pl.'s Resp. at

27–28.)  From the outset, I note that Defendants Mullen and Harvey are not interested "by

definition" as Plaintiff would suggest simply because Plaintiff asserted insider selling claims

against them.  *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003).[4]  "[I]t is unwise to

formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff

cursorily alleges that he made sales of company stock in the market at a time when he possessed

---

[4]Plaintiff cites the following cases in support of his position that "directors who allegedly engaged in insider trading were interested for purposes of demand futility:" *In re Cooper Co., Inc.*, NO. 12584, 2000 WL 1664167, at *7 (Del. Ch. Oct. 31, 2000); *In re Oxford Heath Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000); *In re Gen. Instrument Corp., Sec. Litig.*, 23 F. Supp. 2d 867 (N.D. Ill. 1998); *In re Storage Tech. Corp. Sec. Litig.*, 804 F. Supp. 1368 (D. Colo. 1992). Noticeably absent from each of these cases is a discussion regarding director "interest" based on insider trading or selling for purposes of demand futility.  Additionally, with the exception of a quote from *Rales*, 480 A.2d at 926, Plaintiff does not cite any other support for his argument.

material, non-public information." *Id.* Instead, Plaintiff must demonstrate that he pled

"particularized facts regarding the directors that create a sufficient likelihood of personal liability

because they have engaged in material trading activity at a time when (one can infer from

particularized pled facts that) they knew material, non-public information about the company's

financial condition." *Id.* at 502.

Plaintiff contends that Defendants Harvey and Mullen traded on material non-public

information "in the middle of 2005, only months before" the news of Defendant Snyder's alleged

usurpation of corporate opportunities. (Pl.'s Resp. at 28.) Plaintiff identifies the material non-

public information upon which Defendants Harvey and Mullen allegedly traded upon as follows:

(1) "Defendant Snyder's strong-arm tactics in forcing the board to award Mach Robin the rights

to the most lucrative franchises at the expense of [Defendant] Red Robin;" (2) "the pattern of a

total lack of control and/or adherence to the [Defendant Red Robin's] internal controls and

publicly stated policies;" and (3) "Defendant Snyder's use of [Defendant Red Robin's] funds for

personal reasons which were inconsistent with [Defendant Red Robin's] policies." (Pl.'s Resp. at

28.)

First, as stated in Plaintiff's complaint, the public knew of Defendant Snyder's interest in

the Mach Robin franchises and the Board's alleged waiver of the Code of Ethics as early ast

November 2004. (Am. Compl. ¶ 64.) Specifically, Plaintiff's complaint states as follows:

> [o]n November 16, 2004, the Rocky Mountain News published a story about
> [Defendant] Red Robin's waiver of its Code of Ethics and the concerns
> surrounding it. The article stated in part . . . . The company's board of directors
> created another kind of unbridled act recently when it waived its Code of Ethics
> for its CEO [Defendant] Snyder, and its earlier vice president of operations,

> [Defendant] Merullo.  It seems that [Defendant] Snyder and [Defendant] Merullo, in addition to their roles as [Defendant] Red Robin executives, own just more than one-third of Mach Robin LLC.  Mach Robin is a company that operates [thirty-two] Red Robin restaurants in Illinois, New Mexico, Idaho [sic] and Nevada [sic] and Canada.

(*Id.*)  Thus, taking the allegations in the complaint as true, the information Defendants Harvey and Mullen allegedly traded upon is in "the middle of 2005," was public information.

Second, the complaint fails to state what information, if any, Defendants Harvey and Mullen possessed regarding "Defendant Snyder's rampant self-dealing and usurpation of [Defendant Red Robin's] corporate opportunities" at the time they sold Defendant Red Robin stock.  Rather, Plaintiff merely states that "[a]s a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at Board meetings, each of the defendants knew the adverse, non-public information . . . ."  (*Id.* ¶ 98[o].)  With the exception of the two pieces of information discussed above, Plaintiff does not detail the information that Defendants Harvey and Mullen came into contact with during these amorphous conversations, meetings, and document reviews.  Moreover, Plaintiff does not indicate how or why Defendants Harvey and Mullen would have perceived any irregularities with Defendant Snyder's conduct.  *See Guttman*, 823 A.2d at 503 (noting that absent well-pled particularized allegations regarding such basic facts about the alleged material non-public facts plaintiff will not be able to overcome the demand futility requirement by alleging insider selling).

Additionally, while Plaintiff does allege that Defendant Harvey and Mullen reaped a substantial amount of proceeds from their respective sales, these facts do not support an inference

of insider selling or create a reasonable doubt that Defendants Harvey and Mullen have a

substantial likelihood of liability for insider selling.  Plaintiff's complaint alleges two stock sales by

Defendant Harvey — April 18, 2005 and June 3, 2005.  (Am. Compl. ¶ 90.)  Plaintiff's complaint

alleges eight stock sales by Defendant Mullen, with certain dates having multiple sales —

September 9, 2004; two sales on April 18, 2005; three sales on May 31, 2005; and two on June

16, 2005.  (*Id.*)  The timing of Defendant Harvey's and Mullen's trades are relatively

unimpressive.  The court cannot draw an inference from the simple fact that each of these

Defendants traded stock "only months before news of Defendant Snyder's" alleged self dealing, as

Plaintiff suggests.  (*See* Pl.'s Resp. at 28.)  Indeed, Plaintiff has not pled particularized facts

showing that Defendants Harvey and Mullen possessed material non-public information on the

dates of the aforementioned sales.  Simply because Defendants Harvey and Mullen sat on the

Board at the time they sold stock does not necessarily support the conclusion that those directors

face a substantial threat of liability for insider selling such that demand requirement was futile.

*See Guttman*, 823 A.2d at 504.

It is also relevant to note that neither Defendants Harvey nor Mullen are named

Defendants in the consolidated federal securities suits.  (See *Baird v. Red Robin Gourmet

Burgers, Inc.*, 05–cv–01903; *Andre Andropolis v. Red Robin Gourmet Burgers, Inc, Michael J.

Snyder, and James P. McCloskey*, No. 05–cv–01563.)  Those actions are based on the based on

the same allegations as the shareholder derivative suit at issue.  (Magistrate Order at 2.)  This

evidence militates against a finding that the allegations in Plaintiff's shareholder derivative

complaint demonstrate that Defendant's Harvey and Mullen face a substantial threat of liability for

-30-

insider trading or selling.  Thus, Plaintiff has not demonstrated that Defendants Harvey and Mullen are interested.

Based on the foregoing, Plaintiff has failed to alleged particularized facts to show that a majority of the Board lacks independence or is interested in the challenged transactions and activity such that a pre-litigation demand on the Board was futile.  Therefore, all of Plaintiff's claims in the amended shareholder derivative complaint must be dismissed against all Defendants.

**3.     *Conclusions***

Based on the foregoing it is therefore

ORDERED as follows:

1.  Defendant Red Robin's motion to dismiss for failure to plead demand futility (# 82) is GRANTED.

2.  Defendants Rothe's, Singer's, Mullen's, Graebel's, and Harvey's motion to dismiss (# 83) is GRANTED in part and DENIED as moot in part.  Defendants motion is GRANTED with respect to Plaintiff's failure to plead demand futility.

3.  Defendant McCloskey's motion to dismiss (# 84) is GRANTED in part and DENIED as moot in part.  Defendant McCloskey's motion is GRANTED with respect to Plaintiff's failure to plead demand futility.

4.  Defendant Snyder's motion to dismiss (# 86) is GRANTED in part and DENIED as moot in part.  Defendant Snyder's motion is GRANTED with respect to Plaintiff's failure to plead demand futility.

5.  Plaintiff's motion for leave to file a surreply (# 107) is DENIED as moot.

6.  Defendant Snyder's motion to supplement his motion to dismiss (# 134) is DENIED as moot.

7.  The final judgment entered at the conclusion of this case will include judgment in favor of Defendants and against Plaintiff in Civil Action No. 05–cv–01707—EWN–BNB, dismissing all the shareholder derivative claims against all Defendants with prejudice.

8.  The motions hearing scheduled for Friday, August 4, 2006, is VACATED.

Dated this 3rd day of August, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge