IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Edward W. Nottingham

Civil Action No. 05-cv-01563-EWN-BNB

(Consolidated with <u>Baird v. Red Robin Gourmet Burgers, Inc.</u>, 05-cv-01903)

ANDRE ANDROPOLIS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

RED ROBIN GOURMET BURGERS, INC.,
MICHAEL J. SNYDER,
JAMES P. McCLOSKEY,
LISA A. DAHL,
KATHERINE L. SCHERPING, and
DENNIS B. MULLEN,

Defendants.

---

## STIPULATION OF SETTLEMENT

---

This Stipulation of Settlement (the "Stipulation"), dated as of May 24, 2007, is made and entered into by and among the Parties (as defined in ¶ 1.20) to <u>Andropolis v. Red Robin Gourmet Burgers, Inc., et al.</u>, Civil Action No. 05-cv-01563-EWN-BNB in the United States District Court for the District of Colorado (the "Litigation").  The Stipulation is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined in ¶ 1.15), upon and subject to the terms and conditions hereof (the "Settlement").

## I.    THE LITIGATION

On August 15, 2005, Andre Andropolis filed a securities class action against Red Robin Gourmet Burgers, Inc. ("Red Robin" and the "Company")), Michael J. Snyder ("Snyder") and

James P. McCloskey ("McCloskey") in the United States District Court for the District of Colorado (Andropolis v. Red Robin Gourmet Burgers, Inc., et al., 05-cv-01563-EWN-BNB). A related securities class action was filed by Mark Baird against Red Robin, Snyder and McCloskey on September 30, 2005 (Baird v. Red Robin Gourmet Burgers, Inc., et al., 05-cv-01903-LTB). On October 14, 2005, the City of Philadelphia Board of Pensions and Retirement ("CPBPR") petitioned the Court to appoint it Lead Plaintiff in the Litigation. On December 19, 2005, the Court consolidated the Andropolis and Baird cases, appointed CPBPR as Lead Plaintiff in the consolidated case, and approved CPBPR's selection of Berger & Montague, P.C. as lead counsel and Bader & Associates, L.L.C. as local counsel.

On February 28, 2006, Lead Plaintiff filed the Consolidated Complaint (the "Complaint"), asserting claims under Sections 10(b), 14 and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons who purchased the common stock of Red Robin between August 13, 2004 and January 9, 2006, inclusive, against Red Robin, Snyder, McCloskey, Lisa A. Dahl ("Dahl"), Katherine L. Scherping ("Scherping") and Dennis B. Mullen ("Mullen"). More particularly, the Complaint alleges that between August 13, 2004 and August 11, 2005, Red Robin, Snyder, McCloskey, Dahl, and Mullen caused Red Robin's stock to trade at artificially inflated values by making materially false and misleading statements about the adequacy of Red Robin's internal controls in quarterly and annual financial statements filed with the Securities and Exchange Commission ("SEC") when controls related to the use of chartered aircraft and travel and entertainment expenses were inadequate. The Complaint also alleges that between August 13, 2004 and August 11, 2005, Red Robin, Snyder, McCloskey, Dahl and Mullen made materially false and misleading statements concerning Snyder's compensation in Red Robin's

2004 Form 10-K and 2005 proxy by failing to disclose as compensation personal use of the Company's chartered aircraft and non-business expenses paid for by the Company. The Complaint further alleges that Red Robin and the replacement executives (Mullen and Scherping) issued materially false and misleading revenue, earnings and comparable store sales guidance for the third and fourth quarters of 2005 in that they issued the guidance knowing that inadequate controls over financial reporting and other factors made accurate forecasting impossible. Red Robin's and the replacement executives' statements concerning the adequacy of internal controls over financial reporting in quarterly reports filed with the SEC are also alleged to be false and misleading.

On May 1, 2006, Defendants moved to dismiss the Complaint. Lead Plaintiff filed its opposition brief to the motions to dismiss on May 31, 2006. Defendants filed their reply briefs on June 19, 2006.

On January 2, 2007, the Court issued an Order and Memorandum of Decision granting Defendants' motions to dismiss as to all claims with prejudice. On January 17, 2007 the Court entered final judgment against Plaintiffs.

The Parties agreed to attend a non-binding mediation session before retired U.S. District Judge Nicholas Politan on January 18, 2007. On February 14, 2007, Lead Plaintiff filed a Notice of Appeal as to the Court's dismissal of its claims.

After significant negotiation, the Parties reached an agreement to settle the litigation, which is set forth in principle in a Memorandum of Understanding dated April 4, 2007. The terms and conditions of the settlement are contained in this Stipulation of Settlement dated May 24, 2007.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, each and every claim and contention alleged by Lead Plaintiff in the Litigation.  Defendants have expressly denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants have also denied, and continue to deny, *inter alia*, the allegations that Lead Plaintiff or the Settlement Class have suffered damage, that the price of Red Robin common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, or that Lead Plaintiff or the Settlement Class were harmed by the conduct alleged in the Litigation.

Nonetheless, Defendants have concluded that continuing the Litigation would be protracted and expensive, and that it is in their best interests that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Litigation.  Defendants have therefore determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.    CLAIMS OF THE LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

Lead Plaintiff and Plaintiffs' Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims.  However, Lead Plaintiff and Plaintiffs' Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through appeals and through trial.  Plaintiffs' Lead Counsel has also taken into account the uncertain outcome and

the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such Litigation. Plaintiffs' Lead Counsel is also mindful of the inherent problems of proof under and possible defenses to the federal securities law violations asserted in the Litigation. Lead Plaintiff and Plaintiffs' Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class. Based on its evaluation, Plaintiffs' Lead Counsel has determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiff and the Settlement Class.

## IV.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for itself and the Settlement Class) and Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of the Stipulation.

### 1.     Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1     "Authorized Claimant" or "Authorized Claimants" means any member of the Settlement Class whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2     "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.3     "Claims Administrator" shall mean the firm of Heffler, Radetich & Saitta L.L.P. to be approved by the Court to administer the Settlement as provided in the Stipulation.

1.4     "Class Period" means the period commencing August 13, 2004 through and including January 9, 2006.

1.5     "Defendant" means Red Robin Gourmet Burgers, Inc. ("Red Robin"), Michael J. Snyder ("Snyder"), James P. McCloskey ("McCloskey"), Lisa A. Dahl ("Dahl"), Katherine L. Scherping ("Scherping") or Dennis B. Mullen ("Mullen"). "Defendants" means Red Robin, Snyder, McCloskey, Dahl, Scherping, and Mullen collectively.

1.6     "Defendants' Counsel" means Cooley Godward Kronish, L.L.P., Hogan & Hartson, L.L.P., and Katten Muchin Rosenman L.L.P.

1.7     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 7.1 of the Stipulation have been met and have occurred.

1.8     "Escrow Agent" means Berger & Montague, P.C., and its successor(s). The Escrow Agent shall maintain an escrow account at Royal Bank America, subject to such terms as the Parties and the Defendants' insurers may agree.

1.9     "Final" means the later of: (i) *if there is an appeal*, the date on which the Judgment, which has not been altered, amended or modified in any respect by any Court without express consent by all Parties, is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of appeal or otherwise; or (ii) *if no appeal is filed*, the expiration date of the time for the filing or noticing of any appeal from the Court's Judgment approving the Stipulation substantially in the form of Exhibit B hereto −i.e., thirty (30) days after entry of the Judgment.

For purposes of this paragraph, an "appeal" shall include any request for reargument or reconsideration or petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this settlement. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to the Plan of Allocation and/or the Fee Award and Expense Reimbursement Application (as defined in ¶ 6.1 below) shall not in any way delay or preclude the Judgment from becoming Final.

1.10    "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court substantially in the form attached hereto as Exhibit B.

1.11    "Lead Plaintiff" means the City of Philadelphia Board of Pensions and Retirement ("CPBPR"). "Plaintiffs" means Lead Plaintiff and the Settlement Class.

1.12    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, agents or assignees.

1.13    "Plaintiffs' Lead Counsel" means Berger & Montague, P.C.

1.14    "Plan of Allocation" means a plan or formula for allocating the Settlement Fund to Authorized Claimants after payment of Taxes and Tax Expenses (as defined in ¶ 2.8(c) below) and attorneys' fees and reimbursement of expenses as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation and the Released Parties shall have no responsibility or liability with respect thereto.

1.15    "Released Claims" shall mean any and all claims, demands, rights, liabilities and causes of action whatsoever (including, but not limited to, any claims for damages, interest,

attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, including both known claims and Unknown Claims (as defined in ¶ 1.21 below), that have been asserted in the Litigation, or that could have been asserted by Lead Plaintiff or any Settlement Class Members or any of them against any of the Released Parties which arise out of or are based upon the allegations, transactions, facts, matters, or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and which relate to the purchase of shares of the common stock of Red Robin during the Class Period.

1.16  "Released Parties" means Red Robin, Red Robin's subsidiaries, Snyder, McCloskey, Dahl, Scherping and Mullen and each of their respective past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, solicitors, advisors, investment advisors, auditors, accountants, associates, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which any Defendant has a controlling interest, any members of their immediate families, or any trust of which any Defendant is the settlor or which is for the benefit of any Defendant, and/or member(s) of any Defendant's family.

1.17  "Settlement Class" means the class to be certified for settlement purposes only and is defined as all persons who purchased the common stock of Red Robin during the period August 13, 2004 through and including January 9, 2006. Excluded from the Settlement Class are

Defendants and members of their immediate families, any entity in which any Defendant has or had a controlling interest, any trust for which any of the Defendants or members of their immediate families is the settlor or which is for the benefit of any of the Defendants or members of their immediate families, current and former directors and officers of Red Robin and members of their immediate families, and the legal representatives, heirs, successors, or assigns of any such excluded Person.  Those Persons who request exclusion from the Settlement Class in accordance with the terms set forth in the Notice of Pendency and Proposed Settlement of Class Action (the "Settlement Notice"), which is attached hereto as Exhibit A-1, are also excluded from the Settlement Class.

1.18    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class as set forth in ¶ 1.17 of the Stipulation and who has not submitted a valid request for exclusion.

1.19    "Settlement Fund" means the principal amount of One Million Five Hundred Thousand Dollars ($1,500,000) paid pursuant to ¶ 2.1 of the Stipulation and delivered to the Escrow Agent, plus any accrued interest.

1.20    "Parties" means, collectively, each of the Defendants and the Lead Plaintiff on behalf of itself and the Settlement Class.

1.21    "Unknown Claims" means any and all Released Claims which the Lead Plaintiff or Settlement Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, which, if known by him, her, or it might have affected his, her or its decision(s) with respect to the Stipulation.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Lead Plaintiff and

Defendants shall expressly, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendants acknowledge, and Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

## 2. The Settlement

### a. The Settlement Fund

2.1    Defendants will pay (or cause their insurer to pay) the Settlement Fund into an escrow account bearing interest for the benefit of the Settlement Class (the "Escrow Account") within five (5) business days after the Court enters the Notice Order (as defined in paragraph 3.1 below), subject to receipt by counsel for Defendants' insurer (Charles Bramham, Esq. of D'Amato & Lynch) of all necessary account information and wire transfer instructions. The five (5) day period within which Defendants' insurer must pay the Settlement Fund shall run from the date Plaintiffs' Lead Counsel sends by both facsimile and email to counsel for Defendants' insurer (Charles Bramham, Esq. of D'Amato & Lynch) a copy of the signed Notice Order.

2.2    If the Settlement Fund is not paid into the Escrow Account as described in ¶ 2.1, Plaintiffs have the option to terminate the Settlement.

**b.    The Escrow Agent**

2.3    The Escrow Agent shall invest the Settlement Fund deposited pursuant to ¶ 2.1 above in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates.

2.4    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, or by an order of the Court.

2.5    Subject to further order and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Settlement Class as are consistent with the terms of the Stipulation.

2.6    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.  All Parties agree to hold the Escrow Agent harmless for any actions taken by them pursuant to the Stipulation and any escrow agreement.

**c.    Settlement Notice and Administration Expenses**

2.7    Defendants agree that Plaintiffs' Lead Counsel may deduct up to One Hundred Thousand Dollars ($100,000) out of the Settlement Fund for the payment of the costs of notice and administration ("Notice and Administration Fund"), and may deposit the Notice and Administration Fund into a money market account to be designated by Plaintiffs' Lead Counsel. Funds may be disbursed from the Notice and Administration Fund for these purposes without further approval of the Court.  Any funds actually expended for these purposes shall not be

required to be refunded by Plaintiffs' Lead Counsel, even if the settlement is not approved. These costs and expenses shall not include attorney fees generated by Plaintiffs' Lead Counsel in connection with the Settlement Notice and administration of the Settlement Fund. After the Effective Date, Plaintiffs' Lead Counsel may withdraw such sums as are necessary from the Settlement Fund to pay any additional unpaid Notice and Administration Expenses that may remain after the exhaustion of the Notice and Administration Fund. Any such expenditures may be made without further order of the Court, but shall be summarized in any motion seeking a Class Distribution Order (defined in ¶ 5.6 below). Any additional administration costs incurred by the Claims Administrator, including the costs of processing submitted claims, may also be paid from the Settlement Fund, upon Court approval.

**d.     Taxes**

2.8     (a)     The Parties and the Escrow Agent agree that the Settlement Fund is intended to be at all times a "qualified settlement fund" within the meaning of Treas. Reg. Sec. 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.8, including the "relation-back election" (as defined in Treas. Reg. Sec. 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow

Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. Sec. 1.468B-2(k)).  Such returns (as well as the election described in ¶ 2.8(a)) shall be consistent with this ¶ 2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the cash portion of the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.8(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or Defendants' Counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Parties shall have no liability or responsibility for the Taxes or the Tax Expenses.  The Settlement Fund shall indemnify and hold each of the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds

necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Sec. 1.468B-2(l)(2)); Released Parties are not responsible nor shall they have any liability therefor.  The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.8.

**e.      Termination of Settlement**

2.9      In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including accrued interest net of Taxes and Tax Expenses) shall be refunded as described in ¶ 7.5 below.

**3.      Notice Order and Settlement Hearing**

3.1      On or before May 24, 2007, Plaintiffs' Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit A hereto, requesting, *inter alia*, the certification of the Settlement Class for the purpose of settlement, preliminary approval of the Settlement set forth in the Stipulation, including approval for the mailing and publication of the Settlement Notice, substantially in the form of Exhibits A-1 and A-3 hereto, which shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee Award and Expense Reimbursement Application (as defined in ¶ 6.1 below) and the date of the Settlement Hearing (as defined below).

3.2      Plaintiffs' Lead Counsel shall request that, after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth

herein. At or after the Settlement Hearing, Plaintiffs' Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee Award and Expense Reimbursement Application.

**4.    Releases**

4.1    Upon the Effective Date (as defined in ¶ 1.7), Lead Plaintiff and each of the Settlement Class Members on behalf of themselves, their heirs, executors, administrators, successors, assigns, all in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release, or otherwise shares in the Settlement Fund. The Proof of Claim and Release to be executed by Settlement Class Members shall be substantially in the form contained in Exhibit A-2 hereto.

4.2    Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Lead Plaintiff, Plaintiffs' Lead Counsel and Settlement Class Members and their counsel from all claims (including "Unknown Claims") arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

**5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Settlement Fund**

5.1    Plaintiffs' Lead Counsel or the Claims Administrator, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by

Settlement Class Members and shall oversee distribution of the Net Settlement Fund (as defined in ¶ 5.2(d) below) to Authorized Claimants. The Defendants shall have no involvement in reviewing or challenging claims.

5.2    The Settlement Fund shall be applied as follows:

(a)    To pay the Taxes and Tax Expenses described in ¶ 2.8 above;

(b)    To pay attorneys' fees and the reimbursement of expenses awarded by the Court ("Fee Award" and "Expense Reimbursement Award", respectively);

(c)    To pay the notice and administration expenses described in ¶ 2.7 above; and

(d)    To distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

5.4    Within 120 days after the mailing of the Settlement Notice or such other time as may be set by the Court (the "Notice Date"), each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to the Authorized Claimant.

5.5    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.

5.6    Plaintiffs' Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

5.7    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Settlement Notice and approved by the Court.

5.8    The Released Parties shall not have any responsibility for, interest in, or liability whatsoever with respect to the providing of notice, the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith, except for their obligation to pay the Settlement Fund, as provided herein, and to cooperate in making Red Robin's transfer records and shareholder information available to Plaintiffs' Lead Counsel and the Claims Administrator for the purpose of identifying and giving notice to the

Settlement Class.  Any fee charged by a transfer agent for providing Red Robin's transfer records and shareholder information shall be the responsibility of Red Robin.

5.9     If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, to Settlement Class Members who have cashed their checks and who would receive at least $10.00 from such re-distribution.  If six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Plaintiffs' Lead Counsel.

5.10     Plaintiffs' Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Plaintiffs' Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

5.11     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Proof of Claim, supported by such documents as are designated therein, including proof of the claimant's loss, or

such other documents or proof as Plaintiffs' Lead Counsel, in their discretion, may deem acceptable;

(b)    All Proofs of Claim must be postmarked on or before the 120th day following the Notice Date.  Any Settlement Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by Order of the Court, a later submitted Proof of Claim by such Settlement Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement including the terms of the Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims;

(c)    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Plaintiffs' Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)    Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the claimant in order to remedy the curable deficiencies in the Proofs of Claim submitted. The Claims Administrator, under supervision of Plaintiffs' Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

(e)     If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Plaintiffs' Lead Counsel shall thereafter present the request for review to the Court; and

(f)     The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

5.13    No Person shall have any claim against the Lead Plaintiff, Plaintiffs' Lead Counsel, Members of the Class or their counsel, the Claims Administrator, or any Released Party, based on the distributions made in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

5.14    It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

6.    **Plaintiffs' Lead Counsel's Attorneys' Fees and Reimbursement of Expenses**

6.1    Plaintiffs' Lead Counsel will submit an application to the Court for distributions to them from the Settlement Fund for attorneys' fees and reimbursement of expenses, including the fees of any experts or consultants incurred in connection with prosecuting the Litigation (the "Fee Award and Expense Reimbursement Application").

6.2    The attorneys' fees and reimbursement of expenses, as awarded by the Court, shall be paid to Plaintiffs' Lead Counsel from the Settlement Fund immediately after the Court executes an order awarding such fees and reimbursement of expenses, notwithstanding any collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Lead Counsel's obligation to make appropriate refunds or repayments plus interest, if and when, as a result of any successful collateral attack, the Fee Award or Expense Reimbursement Award is reduced or reversed.    Defendants shall not oppose Plaintiffs' Lead Counsel's Fee Award and Expense Reimbursement Application.    In the event that the Judgment or the order concerning Plaintiffs' Lead Counsel's Fee Award and Expense Reimbursement Application is reversed or modified, and in the event that the Fee Award and/or the Expense Reimbursement Award have or has been paid to any extent, then those counsel receiving the Fee Award and/or Expense Reimbursement Award shall within ten (10) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, the Fee Award and the Expense Reimbursement Award plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.    Plaintiffs' Lead Counsel, as a condition to receiving such fees and/or reimbursement of expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject

to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph and ¶ 7.5.

6.3     The procedure for and the allowance or disallowance by the Court of Plaintiffs' Lead Counsel's Fee Award and Expense Reimbursement Application, to be paid out of the Settlement Fund, is not part of the Settlement set forth in the Stipulation, and is to be considered by the Court separately from the Court's consideration of fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceedings relating to the Fee Award and Expense Reimbursement Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the settlement of the Litigation set forth herein.

6.4     The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Lead Counsel from the Settlement Fund, any distribution made in accordance with the Stipulation and the Settlement contained therein, or the Plan of Allocation.

7.     **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     Defendants timely pay the Settlement Fund as required by ¶ 2.1;

(b)     The Court has entered the Notice Order as required by ¶ 3.1;

(c)     Defendants have not exercised the right provided for in ¶ 7.2;

(d)     The Court has entered the Judgment substantially in the form of Exhibit B hereto; and

(e)     The Judgment has become Final, as defined in ¶ 1.9, above.

7.2     Defendants and Lead Plaintiff, on behalf of the Settlement Class, have entered into a separate agreement in connection with this Settlement which provides that Defendants shall have the right to terminate the Settlement upon conditions set forth in such agreement if the total number of shares of common stock of Red Robin that request to opt-out of the Settlement meets a certain threshold (the "Supplemental Agreement").  Pursuant to the Supplemental Agreement, Defendants shall notify Plaintiffs' Lead Counsel at least seven (7) business days before the date set for the hearing on final approval of the Settlement or such other time as the Court shall allow if Defendants elect to terminate the Settlement in accordance with the terms of the Supplemental Agreement.

7.3     Upon the occurrence of all of the events referenced in ¶ 7.1 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

7.4     If all of the conditions specified in ¶ 7.1 are not met, then the Stipulation shall be canceled and terminated subject to ¶ 7.5 unless Plaintiffs' Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

7.5     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within ten (10) business days after written notification of such event is sent by Defendants' Counsel or insurer or Plaintiffs' Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest),

less any funds actually expended for the payment of the costs of notice and administration, shall be refunded by the Escrow Agent to Defendants' insurer. At the request of Defendants' Counsel or insurer, the Escrow Agent or its designee shall apply for any Tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to Defendants' insurer.

7.6     In the event that the Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the Parties shall be restored to their respective positions in the Litigation as of the date of this Stipulation. In such event, the terms and provisions of this Stipulation (other than paragraph 7.5 and this paragraph 7.6), shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or Plaintiffs' Lead Counsel's Fee Award and Expense Reimbursement Application shall constitute grounds for cancellation or termination of the Stipulation.

## 8.     Miscellaneous Provisions

8.1     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

8.2     The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all

terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.3     The Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims which are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. Other than the statement that "the Litigation is being settled voluntarily after consultation with competent legal counsel," the Parties will not make any statement to any media representative (whether or not for attribution), regarding the Litigation, information received from other parties during this Litigation, or this Stipulation, provided, however, that Red Robin may report the terms of the Settlement in its filings with the SEC. The Final Judgment will contain a statement that the Parties agree that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, and the Parties agree not to make any public statements that contradict such a finding. The Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

8.4     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of Defendants in any civil, criminal or administrative proceeding in any court, administrative

agency or other tribunal. Defendants may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.5    All of the Exhibits to the Stipulation are material and integral parts thereof and are fully incorporated therein by this reference.

8.6    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

8.7.    The Stipulation and the Exhibits attached thereto and the Supplemental Agreement constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided therein, each party shall bear its own costs.

8.8    Plaintiffs' Lead Counsel, on behalf of the Settlement Class, are expressly authorized by the Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate.

8.9    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.10    The Stipulation may be executed in one or more counterparts, including by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

8.11    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.12    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

8.13    The Stipulation and the Exhibits thereto shall be governed by Federal Law, including Rule 23 of the Federal Rules of Civil Procedure.

8.14    To the extent not covered by Federal Law, the Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Colorado, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Colorado without giving effect to that State's choice of law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

Dated: May 24, 2007

s/ Sherrie R. Savett

Sherrie R. Savett
Russell D. Paul
Casey M. Preston
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
*Lead Counsel for Lead Plaintiff City of
Philadelphia Board of Pensions and Retirement and
the Class*

Dated: May 24, 2007

s/ Gerald L. Bader, Jr.

Gerald L. Bader, Jr.
Renée B. Taylor
14426 East Evans Ave., Suite 200
Denver, CO 80014
Telephone: (303) 534-1700
*Local Counsel for Lead Plaintiff City of
Philadelphia Board of Pensions and Retirement and
the Class*

Dated: May 24, 2007

s/ Andrew R. Shoemaker

Andrew R. Shoemaker
HOGAN & HARTSON, L.L.P.
1470 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (720) 406-5360
*Counsel for Defendants Red Robin Gourmet
Burgers, Inc., Lisa A. Dahl, Katherine L.
Scherping, and Dennis B. Mullen*

Dated: May 24, 2007

s/ Pamela G. Smith

David H. Kistenbroker
Pamela G. Smith
Michael S. Weisman
KATTEN MUCHIN ROSENMAN, L.L.P.
525 West Monroe Street, Suite 1900
Chicago, IL 60661-3693
Telephone: (312) 902-5412
*Counsel for Defendant Michael J. Snyder*

Dated: May 24, 2007            s/ James E. Nesland
                               James E. Nesland
                               Paul H. Schwartz
                               COOLEY GODWARD KRONISH, L.L.P.
                               380 Interlocken Crescent, Suite 900
                               Broomfield, CO 80021-8023
                               Telephone: (720) 566-4000
                               *Counsel for Defendant James P. McCloskey*