**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CIVIL ACTION NO. 05-cv-01563-EWN-BNB | : |
| | : |
| ANDRÉ ANDROPOLIS, On Behalf of Himself and All Others Similarly Situated, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| RED ROBIN GOURMET BURGERS, INC., MICHAEL J. SNYDER, JAMES P. McCLOSKEY, LISA A. DAHL, KATHERINE L. SCHERPING, and DENNIS B. MULLEN, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND THE PLAN OF
ALLOCATION OF SETTLEMENT PROCEEDS**

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. THE SETTLEMENT BEFORE THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    The Primary Terms of the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Process by Which the Settlement Was Reached . . . . . . . . . . . . . . . . . . . . . 4

        1.    Background: Plaintiffs' claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.    The Progress of the Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3.    The Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. GENERAL STANDARDS APPLICABLE TO REVIEW AND JUDICIAL
APPROVAL OF CLASS ACTION SETTLEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. THE SETTLEMENT SHOULD BE APPROVED AS FAIR,
REASONABLE AND ADEQUATE TO THE CLASS . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    The Four Gottlieb/Jones Factors Indicate That The Settlement is Fair,
Reasonable and Adequate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.    The proposed Settlement was achieved only after arduous arm's
length negotiations by capable and fully informed counsel and is
not the result of collusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.    The strengths of Plaintiffs' case and the risks of establishing
liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        3.    The amount of the settlement relative to the mere possibility of
future relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        4.    The parties' judgment that the settlement is fair and reasonable . . . . . . 15

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   Plaintiffs submit this memorandum in support of the proposed Settlement of this securities-fraud class action for payment by the Settling Defendants of $1,500,000 in cash, plus accrued interest (the "Settlement").

## I. INTRODUCTION

The Court must answer only one question on this motion, namely, whether the $1,500,000 Settlement of this litigation, achieved after dismissal of Plaintiffs' Complaint and after arms-length negotiation with a venerable mediator, is fair, reasonable and adequate to the absent Class members. The dollar amount of this Settlement is unquestionably reasonable and untouched by improper influences.

Plaintiffs contended that defendants were liable for making false and misleading statements: (1) about the adequacy of Red Robin's internal controls in quarterly and annual financial statements; (2) regarding executive compensation in Red Robin's 2004 Form 10-K and 2005 proxy statement; and (3) of revenue earnings and comparable store sales guidance for the third and fourth quarters of 2005, during the period from August 13, 2004 through January 9, 2006 (the "Class Period"). Plaintiffs alleged that these misstatements concealed the fact that: (1) internal controls related to the use of chartered aircraft and travel and entertainment expenses were, in fact, inadequate; (2) personal use of the Company's chartered aircraft and non-business expenses were paid for by the Company; and (3) the Company's third and fourth quarter 2005 guidance was false and based on inadequate controls over financial reporting and other factors that made accurate forecasting knowingly impossible. Plaintiffs charged that this conduct violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.D.C. § 78j) and Rule 10b-5 promulgated under § 10(b) by the Securities and Exchange Commission

("SEC") (17 C.F.R. § 240.10b-5), and Sections 14 and 20(a) of the Exchange Act.

Plaintiffs and defendants (the "Settling Defendants")[1] have arrived at the Settlement of this class action after the Complaint was dismissed and after intensive arms' length negotiations before a venerable mediator, U.S.D.J. Nicholas Politan (ret.). Since that time, on June 4, 2007, Snyder agreed to pay a $250,000 civil penalty and to be barred as an officer and director to settle SEC charges that he misrepresented personal travel costs as business expenses and that those misrepresentations caused Red Robin to fail to report material amounts of his compensation in regulatory filings from 2002 through 2004.

For the many reasons set forth in this memorandum, Plaintiffs urge approval of the Settlement. Among these reasons is that the Settlement appears to enjoy the unanimous support of the Class. Counsel for Plaintiffs sent 22,351 copies of the notice of the proposed Settlement to the Class members and published a summary notice in the *Wall Street Journal*. Declaration of Sherrie R. Savett in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement And Plaintiffs' Counsel's Unopposed Motion for An Award of Attorneys' Fees and Expenses ("Savett Decl.") ¶ 6. Though the deadline for filing objections to the settlement has passed, **no settlement-Class member has objected to the settlement, and no settlement-Class member asked to be excluded from the Class.** This is significant because the settlement Class includes, in addition to many individuals, financial institutions such as mutual and pension funds, which have sophisticated counsel available to advise, assist and represent them in expressing any contrary view to the Court as to the merits of the Settlement.

---

[1] The Settling Defendants are Red Robin Gourmet Burgers, Inc., Michael J. Snyder, James P. McCloskey, Lisa A. Dahl, Katherine L. Scherping, and Dennis B. Mullen.

4

A detailed discussion of the background of the case, the major events of the litigation, the settlement negotiations, the terms of the proposed Settlement and its benefits to the Class are set forth in the Savett Decl., submitted in support of the approval of the Settlement and the application for attorneys' fees and reimbursement of expenses.

## II. THE SETTLEMENT BEFORE THE COURT

### A.     The Primary Terms of the Settlement

To settle all claims against them, the Settling Defendants have agreed to pay $1,500,000 in cash, which has been invested in United States Treasury securities and will accrue interest until distribution. These settlement proceeds will be distributed to members of the Class on a *pro rata* basis after payment of settlement and administrative costs, such as the cost of notice sent to all Class members, as well as reasonable attorneys' fees and reimbursement of expenses.

### B.     The Process by Which the Settlement Was Reached[2]

#### 1.     Background: Plaintiffs' claims

Plaintiffs alleged that between August 13, 2004 and August 11, 2005, Red Robin, Snyder, McCloskey, Dahl, and Mullen caused Red Robin's stock to trade at artificially inflated values by making materially false and misleading statements about the adequacy of Red Robin's internal controls in quarterly and annual financial statements filed with the Securities and Exchange Commission ("SEC") when in fact, controls related to the use of chartered aircraft and travel and entertainment expenses were inadequate. Savett Decl. ¶ 12.

The Complaint also alleged that between August 13, 2004 and August 11, 2005, Red

---

[2]Plaintiffs refer the Court to the fuller discussion of the progress and status of the litigation found in the Savett Decl. at 4-10.

Robin, Snyder, McCloskey, Dahl and Mullen made materially false and misleading statements concerning Snyder's compensation in Red Robin's 2004 Form 10-K and 2005 proxy by failing to disclose as compensation personal use of the Company's chartered aircraft and non-business expenses that were paid for by the Company. Savett Decl. ¶ 12.

The Complaint further alleged that Red Robin and the replacement executives (Mullen and Scherping) issued materially false and misleading revenue, earnings and comparable store sales guidance for the third and fourth quarters of 2005 in that they issued the guidance knowing that inadequate controls over financial reporting and other factors made accurate forecasting impossible. Savett Decl. ¶ 12.

Red Robin's and the replacement executives' statements concerning the adequacy of internal controls over financial reporting in quarterly reports filed with the SEC were also alleged to be false and misleading. Savett Decl. ¶ 12.

### 2. The Progress of the Litigation

On August 15, 2005, Andre Andropolis filed a securities class action against Red Robin Gourmet Burgers, Inc. ("Red Robin" and the "Company"), Michael J. Snyder and James P. McCloskey in the United States District Court for the District of Colorado (<u>Andropolis v. Red Robin Gourmet Burgers, Inc., et al.</u>, 05-cv-01563-EWN-BNB). A related securities class action was filed by Mark Baird against Red Robin, Snyder and McCloskey on September 30, 2005 (<u>Baird v. Red Robin Gourmet Burgers, Inc., et al.</u>, 05-CV-01903-LAB). On October 14, 2005, the City of Philadelphia Board of Pensions and Retirement ("CPBPR") petitioned the Court to appoint it Lead Plaintiff in the litigation. On December 19, 2005, the Court consolidated the <u>Andropolis</u> and <u>Baird</u> cases, appointed CPBPR as Lead Plaintiff in the consolidated case, and

approved CPBPR's selection of Berger & Montague, P.C. as lead counsel and Bader & Associates, L.L.C. as local counsel. Savett Decl. ¶¶ 7-10.

On February 28, 2006, Lead Plaintiff filed the Consolidated Complaint (the "Complaint"), asserting claims under Sections 10(b), 14 and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons who purchased the common stock of Red Robin between August 13, 2004 and January 9, 2006, inclusive, against Red Robin, Snyder, McCloskey, Dahl, Scherping and Mullen. Specifically, the Complaint alleged claims arising under § 10(b) of the Exchange Act and SEC Rule 10b-5 against Red Robin and the Individual Defendants, under § 14 of the Exchange Act and SEC Rules 14a-3 and 14a-4 against Defendants Snyder, McCloskey, Mullen, Dahl and Red Robin, and under § 20(a) of the Exchange Act for control-person liability against the Individual Defendants. Savett Decl. ¶¶ 11-13.

On May 1, 2006, Red Robin and the Individual Defendants submitted three (3) separate motions to dismiss the Complaint. Plaintiffs responded to these dismissal motions on May 31, 2006 with one omnibus memorandum totaling 80 pages. Defendants filed their reply briefs on June 19, 2006. Savett Decl ¶¶ 14-18.

The heart of the motions to dismiss was whether Plaintiffs had pled actionable misrepresentations and fraud with sufficient particularity to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). Defendants also argued that Plaintiffs failed to adequately allege scienter with respect to undisclosed executive compensation and that Red Robin's earnings forecast were protected by the PSLRA's safe harbor. *See* Savett Decl. ¶¶ 14-17 for a detailed description of these arguments.

### 3. The Mediation

On January 2, 2007, the Court issued an Order and Memorandum of Decision granting Defendants' motions to dismiss as to all claims with prejudice. On January 17, 2007, the Court entered final judgment against Plaintiffs. Savett Decl. ¶ 20.

The Parties agreed to attend a non-binding mediation session before retired U.S. District Judge Nicholas Politan on January 18, 2007. On February 14, 2007, Lead Plaintiff filed a Notice of Appeal as to the Court's dismissal of its claims. Savett Decl. ¶¶ 22-24.

Mediation commenced January 18, 2007 in West Palm Beach Florida and lasted the entire day. Further mediation was held by telephone on February 5, February 6, March 1 and March 13, 2007. Savett Decl. ¶¶ 26-27.

After significant negotiation, the parties reached an agreement to settle the litigation, which is set forth in principle in a Memorandum of Understanding dated April 4, 2007. Plaintiffs then turned to confirming the reasonableness of the settlement and drafting the Stipulation of Settlement. The terms and conditions of the settlement are contained in the Stipulation of Settlement dated May 24, 2007. Savett Decl. ¶¶ 30-32.

Plaintiffs insisted that the $1,500,000 be placed in an interest-earning escrow account within 5 days of the date the Court entered the Order Preliminarily Approving Settlement and Approving the Form and Manner of Notice.

### III. GENERAL STANDARDS APPLICABLE TO REVIEW AND JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

Courts favor settlement of disputed claims. See Taylor v. Miller, 2007 WL 927937, *2 (W.D. Okla. Mar. 26, 2007)(a copy is attached as Exhibit 4E) ("Plaintiffs rightly note that 'the

law favors settlement of disputes.'... See American Home Assur. Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977)"); Rauch v. Sutphin Elec. Motors, Corp., 2007 WL 184667, *4 (D. Colo. Jan. 19, 2007)(a copy is attached as Exhibit 4B) ("The law favors compromise and settlement and settlements will be enforced by the court.") citing Citywide Bank of Denver v. Herman, 978 F. Supp. 966, 977 (D. Colo. 1997).[3] Indeed, there is an overriding public interest favoring settling and ending litigation. Ahern v. Central Pac. Freight Lines, 846 F.2d 47, 48 (9th Cir. 1988).[4] And in evaluating securities class-actions settlements, the courts have long recognized that compromise is particularly appropriate since such litigation "is notably difficult and notoriously uncertain." Lewis v. Newman, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).[5] As one court explained:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation

---

[3] See also Wilkerson v. Martin Marietta Corp., 171 F.R.D. 273, (D. Colo. 1997); Denver v. Adolph Coors Co., 813 F. Supp. 1476, 1479 (D. Colo. 1993); FDIC v. Geldermann, Inc., 763 F. Supp. 524, 528 (W.D. Okla. 1990); Alvarado Partners, L.P. v. Mehta, 723 F. Supp. 540, 551 (D. Colo. 1989); American Employers' Ins. Co. v. King Resources Co., 1975 U.S. Dist. Lexis 12910 at *11 (D. Colo. Apr. 10, 1975)(a copy is attached as Exhibit 4A).

[4] See also Van Bronkorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) cited with approval in Alvarado Partners, 723 F. Supp. at 551.

[5] See also Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1983) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.") citing 3 Newberg, Class Actions § 5570c, at 479-80 (1977); Miller v. Republic Nat'l Life Ins. Co., 559 F.2d 426, 428-29 (5th Cir. 1977) ("Settlement agreements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'") citing Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir. 1975); see also In re Washington Pub. Power Supply Sys. Sec. Litig. ("WPPSS"), 720 F. Supp. 1379, 1387 (D. Ariz. 1989) ("[settlement] is indeed the preferred means of dispute resolution, particularly in complex class action [securities] litigation such as this"), aff'd, 955 F.2d 1268 (9th Cir. 1992); Nelson v. Bennett, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987) (noting that "federal courts [have] long recognized the public policy in favor of the settlement of complex securities actions").

9

imposes upon already scarce judicial resources. Id. Armstrong v. Board of School Directors, 616 F.2d 305, 313 (7th Cir. 1980).[6]

Under Fed. R. Civ. P. 23(e), a class-action settlement is entitled to final approval where it is "fair, reasonable and adequate" to class members. Gottlieb v. Wiles, 11 F.3d 1004, 1007 (10th Cir. 1993).[7] The Court must decide whether the recovery achieved is reasonable, balancing the potential rewards of continued litigation against the risk of recovering less or nothing at all. The Court is thus required to "compare the terms of the compromise with the likely rewards of litigation." Weinberger v. Kendrick, 698 F.2d at 73 (quoting Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)). That determination necessarily involves "an amalgam of delicate balancing, gross approximations and rough justice." Officers of Justice v. Civil Serv. Com., 688 F.2d 615, 625 (9th Cir. 1982) (quoting Detroit v. Grinnell Corp., 495 F.2d 448, 468 (2d. Cir. 1974)). But as the Supreme Court has instructed, courts should not adjudicate the merits of the action, nor substitute their judgment for that of the parties who negotiated the settlement. Carson v. American Brands, Inc., 450 U.S. 79, 88 n.14 (1981).[8] As this Court has emphasized, a court's review of any settlement is thus limited to two questions, namely, determining whether the settlement (i) was tainted by fraud or

---

[6] See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.")

[7] See also Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993); Diaz v. Romer, 801 F. Supp. 405, 407 (D. Colo. 1992), aff'd, 9 F.3d 116 (10th Cir. 1993); Alvarado Partners, 723 F. Supp. at 546.

[8] See also Wilkerson, 171 F.R.D. at 284 (citing Carson); In re King Resources Co. Sec. Litig, 420 F. Supp. 610, 625 (D. Colo. 1976) ("[c]ourt need not, and should not, decide the merits of the controversy").

collusion, and (ii) is fair, reasonable and adequate. See In re New Mexico Natural Gas Antitrust Litig., 607 F. Supp. 1491, 1497 (D. Colo. 1984) (quoting Officers for Justice, 688 F.2d at 625).

To guide courts' evaluation of proposed class-action settlements, the Tenth Circuit in Gottlieb v. Wiles identified several factors:

- whether the proposed settlement was fairly and honestly negotiated;

- whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

- whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

- the judgment of the parties that the settlement is fair and reasonable.

Gottlieb v. Wiles, 11 F.3d at 1014; see also Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002) (affirming test); Alvarado Partners v. Mehta, 723 F. Supp. 540, 546-48 (D. Colo. 1989) (applying settlement approval factors to securities class action).[9] Additional relevant factors may include: (i) the risk of establishing damages at trial; (ii) the extent of discovery and the current posture of the case; (iii) the range of possible settlement; and (iv) the reaction of class members to the proposed settlement. In re New Mexico Natural Gas Antitrust Litig., 607 F. Supp. at 1504; Wilkerson, 171 F.R.D. at 284 (citing New Mexico).

These factors require the Court to decide whether the proposed Settlement falls within the range of reasonable settlements, taking into account that settlements are compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. See In re WPPSS, 720 F. Supp. at 1387 ("[T]he essences of settlement is

---

[9] The Tenth Circuit first listed these factors in Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322 (10th Cir. 1984), which cited the District of Colorado's decision in King Resources, 420 F. Supp. 610 (D. Colo. 1976).

11

compromise. Compromise involves the moderation of lofty and idealized hopes and the relinquishment of unyielding and absolute positions.").[10] In lieu of a more extended inquiry into the claims asserted, courts examine "the negotiating process by which the settlement was reached" (Weinberger, 698 F.2d at 74[11]) and specifically whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability...necessary [for] effective representation of the class's interests." (Id.) Finally, when experienced counsel support the settlement, as here, their opinions are entitled to considerable weight. Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983); Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th Cir. 1980).[12]

## IV. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

In the present case, the facts and circumstances compel the conclusion that the proposed Settlement is fair, reasonable and adequate. Lead Plaintiff believes the Settlement is in the best interests of Lead Plaintiff and the Class.

---

[10] See also South Carolina Nat'l Bank v. Stone, 139 F.R.D. 335, 339 (D.S.C. 1991) ("[s]ettlements by definition, are compromises which 'need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits'"; quoting In re Saxon Sec. Litig., [1985-86 Binder] Fed. Sec. L. Rep. (CCH) ¶ 92,414 at 91,525 (S.D.N.Y. 1985)(a copy is attached as Exhibit 4D); In re Real Estate Title & Settlement Servs. Antitrust Litig., 1986-1 Trade Cas. (CCH) ¶ 67,149, at 62,930 (E.D. Pa. 1986) ("[c]ompromise is the essence of a settlement and as long as the compromises reached by the parties place the settlement within the range of settlements which are reasonable given the facts of the case, the settlement should be approved"), aff'd, 815 F.2d 695 (3d Cir. 1987) (a copy is attached as Exhibit 4C).

[11] See also Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983) ("[t]he trial judge determines [the] fairness, reasonableness, and adequacy of a proposed settlement by considering...the negotiating process").

[12] See also Chatelain v. Prudential-Bache Secs., Inc., 805 F. Supp. 209, 212 (S.D.N.Y. 1992); In re WPPSS, 720 F. Supp. at 1392; Kirkorian v. Borelli, 695 F. Supp. 446, 451 (N.D. Cal. 1988).

> **A.  The Four Gottlieb/Jones Factors Indicate That The Settlement is Fair, Reasonable and Adequate**
>
> **1.  The proposed Settlement was achieved only after arduous arm's length negotiations by capable and fully informed counsel and is not the result of collusion**

The first factor highlighted by the Tenth Circuit as critical to any assessment of the merits of a class-action settlement – whether the proposed settlement was fairly and honestly negotiated – fully supports the conclusion that the proposed Settlement merits the Court's approval. E.g., Gottlieb, 11 F.3d at 1014; Jones, 741 F.2d at 324.[13] As the Declaration of Sherrie Savett makes clear, this litigation was marked by vigorous and tenacious advocacy from the outset.[14] The settlement negotiations were complex and hard fought. They broke down on multiple occasions as a result of the wide differences in the Settling Defendants' views of the merits of the class action. Nevertheless, the parties persevered through these difficulties, and they signed initial Memorandum of Understanding on March 29, 2007.

Further evidence of the fair and honest nature of the settling parties' negotiations is the fact that, throughout those discussions, all parties were represented by counsel with extensive experience in securities litigation in general and securities class actions in particular. Plaintiffs' counsel, for example, brought to the bargaining table many years of experience in litigating securities-fraud class actions and negotiating class-action settlements that have been approved by courts throughout the country.

---

[13] See also Alvarado Partners, 723 F. Supp. at 546.

[14] Cf., In re New Mexico Natural Gas Antitrust Litig., 607 F. Supp. at 1506-07.

Finally, to ensure that Class members "whose rights may not have been given adequate consideration during the settlement negotiations" were protected from a collusive settlement, Plaintiffs' Counsel issued notice to absent Class members in the manner ordered by this Court and required by Rule 23, due-process principles and the pertinent provisions of the PSLRA (see 15 U.S.C. § 77z-1(a)(7) and 15 U.S.C. § 78u-4(a)(7)). Cf., Alvarado Partners, 723 F. Supp. at 546-47.[15] Counsel selected a qualified and experienced claims administrator, the Heffler, Radetich & Saitta firm, who mailed over 22,350 copies of the court-approved "Notice of Pendency and Settlement of Class Action" to all known settlement-Class members and arranged to publish the court-approved summary notice in the *Wall Street Journal*. The notice informed settlement-Class members of: the terms of the Settlement; the Plan of Allocation; the nature of the settled claims: the estimated damages and the status of the litigation; the date, time and place of the hearing on Plaintiffs' motions to approve the Settlement and award of attorneys' fees; and the procedure allowing them to comment on, object to or request exclusion from the Settlement. Cf., Alvarado Partners, 723 F. Supp. at 547. Counsel's adherence to this well-established procedure protected the rights of absent settlement-Class members. See id.

In view of all these circumstances, there can be no legitimate question that the proposed Settlement resulted from an adversarial process designed to produce a fair and honest settlement for Plaintiff and all absent members of the settlement Class.

**2.    The strengths of Plaintiffs' case and the risks of establishing liability**

The next Gottlieb/Jones factor is whether there were "serious questions of law and

---

[15]See also In re New Mexico Natural Gas Antitrust Litig., 607 F. Supp. at 1497 (citing *inter alia* Collins v. Thompson, 679, F.2d 168, 172 (9th Cir. 1982)).

14

fact...placing the ultimate outcome of the litigation in doubt." Gottlieb, 11 F.3d at 1014; Jones, 741 F.2d at 324; see also Alvarado Partners, 723 F. Supp. at 546. At the time they reached the Settlement, Plaintiffs' Counsel believed that this was a strong case. However, they also recognized that they faced numerous risks and uncertainties, especially in light of the Court's dismissal of the Complaint[16] – and were well aware that many other securities class action have been prosecuted in the belief that they were meritorious, only to lose on summary judgment, at the trial or on appeal.[17] The Settlement provides Plaintiffs and the Class a substantial and immediate recovery. Taking these factors into consideration, as well as many others, counsel for Plaintiffs and the Class concluded that the Settlement is in the Class' best interests.

3. **The amount of the settlement relative to the mere possibility of future relief**

The third Gottlieb/Jones factor for evaluating the adequacy of a class-action settlement, *i.e.*, whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation (see Gottlieb, 11 F.3d at 1014; Jones, 741 F.2d at 324)[18] This factor indicates that the proposed Settlement is fair, reasonable and adequate. As many

---

[16] Cf., Wilkerson, 171 F.R.D. at 285 ("the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable"); West Virginia v. Chas, Pfizer & Co., Inc., 314 F. Supp. 710 at 743-44 ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

[17] Plaintiffs have won huge judgments at trial, only to lose on appeal. See e.g., Backman v. Polaroid Corp., 910 F.2d 10 (lst Cir. 1990) (*en banc*) (action dismissed following 11 years of litigation and a $30 million judgment for plaintiffs following trial that was largely affirmed by the first appellate panel); MCI Comm. Corp. v. American Tel. & Tel. Co., 708 F.2d 1081 (7th Cir. 1983); Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263 (2d Cir. 1979); Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973) (reversing treble damage judgment for over $145,000,000 – in action begun in 1961); Piper v. Chris-Craft Indus., Inc., 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 after eight years of litigation).

[18] See also Alvarado Partners, 723 F. Supp. at 546.

courts have noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." E.g., Rubenstein v. Republic Nat'l Life Ins. Co., 74 F.R.D. 337, 347 (N.D. Tex. 1976).[19]

The principle resonates here. When contrasted with continued litigation against the Settling Defendants, if plaintiffs were successful on their appeal and the case continued, the Settlement's principal virtue is that it provides the Class with a sum certain now, without the requirement of protracted litigation.

### 4. The parties' judgment that the settlement is fair and reasonable

The final factor highlighted in Gottlieb for assessing the adequacy of any settlement – the parties' own view of the settlement (Gottlieb, 11 F.3d at 1014; Jones, 741 F.2d at 324) – also weighs heavily in favor of the determination that the Class Settlement should be approved. Pursuant to this Court's Notice Order, 22,351 separate notices of the pendency of the action and proposed Settlement in the form approved by the Court were mailed to the Class members. Savett Decl. ¶ 6. Plaintiffs also published a summary notice in the *Wall Street Journal*. Id. ***No Class member has objected*** to the Settlement and **none have elected to opt out**. Id. This absence of objections is particularly significant because the Class includes, in addition to individuals, numerous financial institutions such as mutual and pension funds, which have sophisticated counsel available to advise, assist and represent them in expressing any contrary view to the Court as to the merits of the Settlement. Indeed, the Settlement and fee request here are supported by Lead Plaintiff, a large institutional investor with substantial losses who played

---

[19] See also Alvarado Partners, 723 F. Supp. at 547; King Resources, 420 F. Supp. at 625; West Virginia v. Chas. Pfizer & Co., Inc., 314 F. Supp. 710, 743-744 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079 (2d Cir. 1971).

an active roll in all aspects in the Litigation. Id. Thus, where, as here, there is unanimous support of a proposed Settlement by the beneficiaries, it is persuasive evidence that the proposal if fair and reasonable. See Alvarado Partners, 723 F. Supp. at 548; King Resources, 420 F. Supp. at 627; Detroit, 495 F.2d at 462.

Plaintiffs' counsel also recommends to the Court that it approve the Settlement. Given their backgrounds and their extensive experience and success in prosecuting class actions,[20] their judgment is entitled to substantial weight. E.g. Wilkerson, 171 F.R.D. at 288-89; Alvarado Partners, 723 F. Supp. at 548 (the "views and experience of counsel are legitimate factors to consider"); In re new Mexico natural Gas Antitrust Litig., 607 F. Supp. at 1506. Cf., King Resources, 420 F. Supp. at 625 ("[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching"). Here, Plaintiffs' Counsel, after extensive arm's length negotiations and with keen awareness of their case's strengths and weaknesses, has determined that the Settlement is fair, reasonable and adequate to Plaintiffs and the Class.

---

[20]Plaintiffs' lead counsel biography and résumé is attached as Exhibit C to the Declaration of Sherrie R. Savett In Support Of Plaintiffs' Unopposed Motion For An Award Of Attorneys' Fees And For Reimbursement Of Expenses, which is Exhibit 1 of Plaintiffs' Counsel's Memorandum Of Law In Support Of Its Unopposed Motion For An Award Of Attorneys' Fees And For Reimbursement Of Expenses.

## V. CONCLUSION

For the reasons stated herein and in the Savett Declaration, it is respectfully submitted that the proposed settlement merits final approval by this court.

Dated: September 21, 2007          **BADER & ASSOCIATES, LLC**

By <u>s/ Gerald L. Bader. Jr.</u>
    Gerald L. Bader, Jr.
    14426 E. Evans Avenue, Suite 200
    Denver, CO 80014
    (303) 534-1700

**Plaintiffs' Liaison Counsel**

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

**Plaintiffs' Lead Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Karen Jean Cody-Hopkins**
kjch@lilleylaw   rcosio@lilleylaw.com

**Charles Walter Lilley**
clilley@lilleylaw.com

**Jessica Hoff**
jhoff@lilleylaw.com

**F. James Donnelly**
fjamesdonnelly@comcast.net

**James E. Nesland**
neslandje@cooley.com  foutsdl@cooley.com  inghramjl@cooley.com
calendarreq@cooley.com

**Paul Howard Schwartz**
schwartzph@cooley.com  colitigation@cooley.com  inghramjl@cooley.com
foutsdl@cooley.com  calendarreq@cooley.com

**Andrew Ryan Shoemaker**
arshoemaker@hhlaw.com  tlfry@hhlaw.com  ecfnotices@hhlaw.com

**Kip Brian Shuman**
kip@shumanlawfirm.com  lisa@shumanlawfirm.com

**Jeffrey Allen Smith**
jsmith1@cooley.com  foutsdl@cooley.com  inghramjl@cooley.com
calendarreq@cooley.com

**Pamela G. Smith**
pamela.smith@kattenlaw.com  cynthia.jukovich@kattenlaw.com

**Jeffrey Alan Springer**
jspringer@springer-and-steinberg.com  law@springer-and-steinberg.com

**Thomas Lee Strickland**
tlstrickland@hhlaw.com  kddarling@hhlaw.com

**Marc M. Umeda**
umeda@ruflaw.com  zimmer@ruflaw.com  sputtick@ruflaw.com  bbrillo@ruflaw.com

**Rachel M. Vorbeck**
rachel.vorbeck@kattenlaw.com  christine.lyman@kattenlaw.com

**Michael S. Weisman**
michael.weisman@kattenlaw.com

and via US mail, first class postage prepaid, to:

**Adam Miller**
3 Baldwin Circle
Weston, MA 02493

s/ Colette Poeppel
Colette Poeppel